## A02A0827. WEST et al. v. VILLAGE FORD-MERCURY, INC.

(567 SE2d 355)

RUFFIN, Judge.

Ronnie and Dutchie West sued Village Ford-Mercury, Inc. ("Village Ford") under a negligent entrustment theory for damages sustained in an automobile collision. Village Ford moved for summary judgment, and the trial court granted the dealership's motion. The Wests appeal. Finding no error, we affirm.

On appeal, we review the trial court's summary judgment ruling de novo and "construe the evidence and all reasonable inferences therefrom in the light most favorable to [the Wests] as the nonmovant[s]."[1] Summary judgment is appropriate only if no genuine issue of material fact remains concerning the Wests' claim.[2]

Viewed in this light, the evidence shows that, on June 27, 1998, a Ford Escort driven by Dorothy Manning collided with the Wests' car. Manning, who was driving at a high rate of speed, hit the Wests from behind, pushing their car off the road and causing it to roll over. Ronnie West noticed that the Escort, which did not have a license plate, had Village Ford dealership tags on the front and rear. West assumed, therefore, that Village Ford owned the car.

Manning testified by affidavit, however, that Village Ford had no ownership interest in the Escort at the time of the collision. According to Manning "[o]n or about June 18 and June 19, 1998[, she] used [her] father, Willie Hamilton, to help purchase [the Escort] from Village Ford." Manning's husband, who worked as a car detailer at Village Ford, saw the car on Village Ford's lot, inquired about purchasing it, and told Village Ford's owner that Manning's father was willing to place the car in his name.

Hamilton testified that he went with his daughter to Village Ford to sign papers so she could "get the car." An application to finance the Escort through Ford Motor Credit Company ("Ford Motor Credit"), dated June 18, 1998, bears Hamilton's signature. He also signed an "Assignment and Warranty of Title by Registered Owner," indicating that he purchased the Escort from Village Ford on June 19, 1998, as well as a simple interest vehicle retail installment contract and an odometer disclosure statement, both dated June 19, 1998. In addition, Hamilton signed an extended service plan agreement dated June 18, 1998.

Although Hamilton, who was 72 years old at the time of his deposition, could not recall exactly when he signed these documents, he testified that he executed them before the June 27, 1998 wreck. After Hamilton signed the papers, Manning took possession of the car.

---

[1] *Hindmon v. Virgil's Food Mart*, 252 Ga. App. 732 (556 SE2d 135) (2001).

[2] See id. at 732-733.

A Ford Motor Credit representative testified that his company opened an account relating to the Escort in Hamilton's name on June 19, 1998. That same day, Ford Motor Credit purchased from Village Ford the retail installment contract signed by Hamilton. According to the representative, "[t]his transaction was processed on June 24, 1998, and settled on June 25, 1998 with the purchase amount of [$]8,195.95 being transmitted to Village Ford Mercury by an electronic funds transfer." Another Ford Motor Credit representative testified that, on the day the credit company processed the transaction and funded the purchase, Hamilton was the vehicle owner, with Ford Motor Credit as the primary lienholder.

On July 16, 1998, the State of Georgia issued a certificate of title listing Hamilton as the Escort's owner. Hamilton, however, never made the payments required under the financing agreement, and, in September 1998, Ford Motor Credit repossessed the car from Village Ford, where it had been taken after the June 27, 1998 collision.

Following the wreck, the Wests sued Village Ford, Hamilton, Manning, and her husband for damages. As to Village Ford, they alleged that, at the time of the collision, the dealership owned the Ford Escort and negligently entrusted it to Manning, despite knowing that Manning was not a competent driver. Village Ford moved for summary judgment, arguing that it did not own the car at the time of the wreck. According to Village Ford, because the Wests' negligent entrustment theory was "based on the presupposition that Village Ford retained some ownership interest in the vehicle," summary judgment was appropriate. The trial court agreed and granted the motion.

Generally, "[l]iability for negligent entrustment is predicated upon 'a negligent act of the owner in lending his automobile to another to drive, with actual knowledge that the driver is incompetent or habitually reckless.' "[3] On appeal, the Wests argue that questions of fact remain as to whether Village Ford had some ownership interest in the Escort, rendering summary judgment improper.[4] We disagree.

Under the Uniform Commercial Code, "[u]nless otherwise explic-

---

[3] *Trent v. Franco*, 253 Ga. App. 104, 109 (2) (558 SE2d 66) (2001).

[4] Throughout this case, the Wests have argued that Village Ford is liable to them because the dealership owned the Escort on June 27, 1998. They have not claimed that – and we need not consider whether – Village Ford negligently entrusted the vehicle to Manning by selling the vehicle to Hamilton or delivering it to Manning after the sale. See *Selph v. Brown Ford Co.*, 181 Ga. App. 547 (353 SE2d 11) (1987) ("[T]o be liable for the negligent entrustment of a vehicle [a party] must be the owner of the vehicle, the party in control of the vehicle, or the party who placed the vehicle in the hands of the incompetent driver."); see also *Reddell v. Allen*, 193 Ga. App. 102-103 (1) (386 SE2d 735) (1989) ("Entrusting of a vehicle may be accomplished by sale as well as by loan.").

itly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place."[5] Prior to the June 27, 1998 collision, Hamilton signed purchase and financing documents relating to the car sale, Ford Motor Credit financed the purchase in Hamilton's name and paid Village Ford the Escort's purchase price, and Manning took possession of the vehicle. The evidence thus shows that Village Ford sold its interest in the car to Hamilton before the collision.[6]

On appeal, the Wests claim that a factual dispute remains regarding when Village Ford applied for a license tag and certificate of title in Hamilton's name — either before the collision or over a week later, on July 6, 1998. Even if this question remains, however, vehicle ownership can change hands under the Commercial Code " 'without the necessity of transferring a title certificate by the seller and obtaining a new one in the name of the purchaser.' "[7] The Motor Vehicle Certificate of Title Act ("the Act")[8] also recognizes that, between a buyer and seller, ownership to an automobile may pass before the buyer obtains the certificate of title.[9] As we have explained, the Act "provide[s] a simple statutory method of proving ownership to motor vehicles but it is not exclusive. The statute did not change the existing case law as to the manner in which ownership of chattels including automobiles could be proven. The certificate is not the title or ownership itself but only evidence of it."[10]

Regardless of whether Village Ford applied for the title or tag before or nine days after the wreck, the evidence shows that the dealership sold its interest in the Ford Escort prior to June 27, 1998. As noted above, before the collision, Hamilton signed numerous docu-

---

[5] OCGA § 11-2-401 (2).

[6] See *Mitchell Motors v. Barnett*, 249 Ga. App. 639, 640-641 (1) (549 SE2d 445) (2001); *Right Touch of Class v. Superior Bank*, 244 Ga. App. 473, 474-475 (1) (536 SE2d 181) (2000); *American Mut. &c. Ins. Co. v. Cotton States Mut. Ins. Co.*, 149 Ga. App. 280, 281 (2) (A) (253 SE2d 825) (1979).

[7] *Mitchell Motors*, supra at 641 (1); see also OCGA § 11-2-401 (2).

[8] OCGA § 40-3-1 et seq.

[9] See OCGA § 40-3-32 (d); *Right Touch*, supra; *Canal Ins. Co. v. Woodard*, 121 Ga. App. 356, 358-359 (1) (173 SE2d 727) (1970). We note that, as to third parties who may acquire an interest in the vehicle, a sales transaction is not effective until the certificate of title is transferred to the buyer. See OCGA § 40-3-32 (d); *Canal Ins.*, supra. The Wests, who have not acquired an interest in the Escort and only seek to establish ownership for their personal injury suit, do not fall within this provision. See *American Mut.*, supra at 281-282 (2) (B); OCGA § 40-1-1 (39) (defining "owner" for purposes of the Act).

[10] (Punctuation omitted.) *Bank South v. Zweig*, 217 Ga. App. 77, 78 (1) (456 SE2d 257) (1995) (physical precedent only); see also *Palmer v. State*, 250 Ga. 219, 223 (5) (297 SE2d 22) (1982) (Act provides additional method of establishing title to motor vehicles but does not change existing law as to how ownership can be proven).

ments relating to the purchase, including the "Assignment and Warranty of Title by Registered Owner," Ford Motor Credit financed the purchase, and Hamilton's daughter took possession of the vehicle. Under these circumstances, the alleged delay in obtaining or applying for the certificate of title or tag did not affect the ownership transfer.[11]

Finally, the Wests argue that any title transferred to Hamilton was void or voidable because the dealership and Manning fraudulently induced Hamilton to enter the purchase agreement. Hamilton testified that he never intended to buy a car and did not understand that the documents he signed involved a purchase. According to Hamilton, he merely "signed for [Manning] to get [a car]." Hamilton further testified that he did not provide the information included on the car financing application and that much of the information was wrong.

Based on this testimony, the Wests seek to treat the purchase as void for purposes of their personal injury suit. They have pointed to no evidence, however, that Hamilton ever rescinded or sought to void the purchase transaction based on fraud. Furthermore, they have not cited any case law or statutory provision authorizing a stranger to a purchase contract to void or rescind that contract. Under OCGA § 13-5-5, "[f]raud renders contracts voidable at the election of the *injured* party," not a third party like the Wests.[12] (Emphasis supplied.) And we have found nothing in Georgia's Commercial Code that gives the Wests such a right.

Simply put, the Wests are strangers to the transaction between Hamilton and Village Ford. As such, they cannot deem that transaction void, despite the allegedly fraudulent circumstances surrounding it. The trial court did not err, therefore, in concluding that the dealership sold its ownership interest in the car before the June 27, 1998 collision. It follows that the trial court properly granted Village Ford summary judgment.

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED JUNE 19, 2002.

*Joseph E. East*, for appellants.

---

[11] See *Mitchell Motors*, supra; *Right Touch*, supra.
[12] See *Phillips v. MacDougald*, 219 Ga. App. 152, 153 (2) (a) (464 SE2d 390) (1995) (third parties to contract allegedly procured through fraud not allowed to treat contract as void because injured party had not declared contract void).

*Young, Thagard, Hoffman & Smith, Matthew R. Lawrence, Crowley & Billiard, Scott C. Crowley*, for appellee.