### A03A0476, A03A0509. LAHAINA ACQUISITIONS, INC. et al. v. GCA STRATEGIC INVESTMENT FUND LTD. et al. (two cases).

(584 SE2d 51)

RUFFIN, Presiding Judge.

Richard P. Smyth and Mongoose Investments, LLC ("the guarantors") sued Lahaina Acquisitions, Inc. ("Lahaina") to recover funds paid to GCA Strategic Investment Fund Ltd. ("GCA") under a guaranty agreement. The trial court granted summary judgment to the guarantors on their indemnification claim, and Lahaina appeals. For reasons that follow, we reverse the judgment in Case No. A03A0509 and dismiss Lahaina's appeal in Case No. A03A0476.

Summary judgment is appropriate when the evidence, viewed favorably to the nonmovant, establishes that no genuine issues of material fact remain and that the moving party is entitled to judgment as a matter of law.[1] "On appeal, we review the trial court's summary judgment ruling de novo."[2]

Viewed in this manner, the record shows that, on December 4, 1998, Lahaina executed a $750,000 convertible promissory note in favor of GCA.[3] Mongoose Investments, LLC and Smyth guaranteed Lahaina's payment under this convertible note, and Mongoose pledged Lahaina common stock to support the guaranty.

On January 10, 2001, GCA sued Lahaina, asserting that it had defaulted under the note and owed GCA $1,327,347.34 in principal and interest. That suit is before this Court in Case No. A03A0476. The following day, GCA sued the guarantors for payment under the Lahaina note. The guarantors subsequently brought a third-party complaint against Lahaina, seeking indemnification for any funds paid under the guaranty. GCA's suit against the guarantors, as well as the guarantors' third-party complaint, is before the Court in Case No. A03A0509.

GCA ultimately settled its lawsuit against the guarantors. Although it appears settlement negotiations were ongoing by at least August 2001, the parties did not execute a settlement agreement until September 14, 2001. Under that agreement, the guarantors agreed to transfer to GCA 900,000 shares of Lahaina common stock to satisfy their guaranty obligation. The agreement further provided that the guarantors, who had filed for bankruptcy, would authorize the release and transfer of the stock "[b]y 12:00 noon on September 2, 2001, or at the earliest reasonable time, once a Bankruptcy Court

---

[1] See *West v. Village Ford-Mercury*, 256 Ga. App. 18 (567 SE2d 355) (2002).

[2] Id.

[3] Under the note, GCA had the right to convert the indebtedness into Lahaina common stock.

order approving this Settlement Agreement becomes final and non-appealable."[4]

According to the guarantors, they "directed" that the stock be transferred to GCA by September 2, 2001. Subsequently, on November 13, 2001, the guarantors demanded that Lahaina give them 900,000 shares of its common stock and reimburse them for attorney fees arising from the litigation. When Lahaina failed to respond to the demand, the guarantors moved for summary judgment on their indemnification claim. They contend that they paid GCA 900,000 shares of common stock worth $1.03 per share on September 2, 2001, entitling them to recover $927,000 from Lahaina.

The trial court granted the motion, finding Lahaina liable for this amount plus interest and attorney fees. Lahaina now appeals the summary judgment order, which was entered in Case No. A03A0509.[5]

## Case No. A03A0509[6]

1. Under OCGA § 10-7-41, "[p]ayment by a surety or endorser of a debt past due shall entitle him to proceed immediately against his principal for the sum paid, with interest thereon, and all legal costs to which he may have been subjected by the default of his principal." Thus, a surety or guarantor that pays its principal's overdue debt may recover the payment from the principal.[7] Citing this provision, the guarantors argue that they are entitled to summary judgment on their indemnification claim because they satisfied Lahaina's debt, at least in part, by transferring 900,000 shares of stock to GCA. Lahaina counters that issues of fact remain regarding the amount paid on the debt, precluding summary judgment. We agree with Lahaina.

To support the guarantors' motion, Smyth submitted an affidavit regarding the settlement with GCA. He testified that the guarantors "directed that the 900,000 shares of Lahaina stock be transferred . . . to GCA by September 2, 2001." He further testified that those

---

[4] We find it odd that a settlement agreement signed on September 14, 2001, references a potential transfer date almost two weeks earlier.

[5] In Case No. A03A0476, GCA also sued Accent Associates, LLC ("Accent"), a company that appears to be affiliated in some way with Lahaina, for default on a $2,500,000 note. RPS & Associates, LLC purportedly guaranteed the Accent note, and RPS asserted an indemnification claim against Accent in the third-party complaint in Case No. A03A0509. The trial court subsequently awarded RPS summary judgment on its claim. Although Accent initially joined in Lahaina's notice of appeal, presumably to challenge this ruling, it failed to file an enumeration of errors or brief. Accordingly, it has abandoned its appeal, which is therefore dismissed. See Court of Appeals Rule 26 (a).

[6] For ease of discussion, we will discuss the appeals in reverse order.

[7] See OCGA § 10-7-41; *Fabian v. Dykes*, 214 Ga. App. 792, 793 (449 SE2d 305) (1994).

shares were then valued at $1.03 each. This testimony, however, does not necessarily establish that the guarantors paid GCA $927,000 on Lahaina's convertible note.

As an initial matter, the guarantors have cited no evidence establishing *when* the stock was, in fact, transferred to GCA. Although they "directed" that the transfer occur on September 2, 2001, the guarantors have not shown whether the transfer agent followed this transfer order. Furthermore, the settlement agreement also required the guarantors to "properly endorse the [stock] Certificates and deliver same to counsel for GCA." The guarantors have not provided any evidence regarding when this delivery occurred. And we do not know when GCA gained control over the stock — or the value of the stock at that point. We also note that the settlement agreement was not signed, and thus was not binding on the parties, until September 14, 2001.

On appeal, the guarantors argue that because *they* lost control of the stock on September 2, 2001, they necessarily paid Lahaina's debt on that date. As noted in the Third Restatement of Suretyship & Guaranty, however, "it is the duty of the principal obligor to reimburse the secondary obligor to the extent that the secondary obligor . . . makes a settlement with the obligee *that discharges the principal obligor*, in whole or part, with respect to the underlying obligation."[8] Discharge of the principal's debt, therefore, creates the duty of reimbursement.[9] Such discharge cannot occur until the lender receives — and exercises control over — the payment. Furthermore, although the actual amount credited against the debt may not be dispositive in valuing the "sum paid" under OCGA § 10-7-41, it should factor into the analysis. This is particularly true in cases involving payment through stock transfer, where the value of stock fluctuates daily.

The guarantors presented evidence regarding the stock's value on September 2, 2001. But they failed to establish when that stock was actually transferred to GCA or when GCA exercised control over it. And Lester Lewis, a GCA director, testified that GCA sold the stock in October 2001 and received only $320,819.98, the amount credited against Lahaina's $750,000 note.[10] Under these circum-

---

[8] (Emphasis supplied.) Restatement (Third) of Suretyship & Guaranty, § 22.

[9] See id.; see also OCGA § 10-7-41 (guarantor may proceed against principal upon payment of a past due debt).

[10] The guarantors claim that the Lester affidavit, which was submitted by GCA in Case No. A03A0476, cannot be considered in Case No. A03A0509. But shortly before the guarantors filed their summary judgment motion, the trial court consolidated these two cases "for all purposes of motions' practice, discovery and trial." In fact, the guarantors requested the consolidation. The affidavit, therefore, was properly in the record when the trial court ruled on the guarantors' motion. Furthermore, despite the guarantors' claims, the trial court did

stances, questions of fact remain regarding the sum paid on Lahaina's debt.[11]

### Case No. A03A0476

2. In this appeal, Lahaina challenges the same summary judgment ruling appealed in Case No. A03A0509. We are not certain why Lahaina filed this appeal — perhaps because the trial court consolidated these two actions below. In Division 1, however, we fully considered the merits of the trial court's summary judgment award. Accordingly, the appeal in Case No. A03A0476 is dismissed as moot.

*Judgment reversed in Case No. A03A0509. Appeal dismissed in Case No. A03A0476. Smith, C. J., and Miller, J., concur.*

DECIDED JUNE 19, 2003.

*Gray, Hedrick & Edenfield, Bruce M. Edenfield, Evan R. Mermelstein,* for appellants.

*Sutherland, Asbill & Brennan, Steven L. Polk, Kirkley & Payne, Dorothy Y. Kirkley, Seacrest, Karesh, Tate & Bicknese, John G. Haubenreich,* for appellees.

---

not deem the affidavit "inadmissible" in Case No. A03A0476. It merely refused to consider it in resolving GCA's motion for summary judgment because GCA submitted it on the day of the summary judgment hearing.

[11] See *Turner v. Commonwealth Mtg. Assurance Co.,* 207 Ga. App. 428, 430-431 (3), (4) (428 SE2d 398) (1993) (given inconsistencies in evidence regarding amount of claim under mortgage insurance policy, question of fact remained regarding sum due under indemnity agreement). On appeal, Lahaina also contends that questions of fact exist as to whether the guarantors' entire payment under the settlement agreement was applied to the $750,000 convertible note. The Lester affidavit establishes, however, that GCA credited all of the proceeds from the stock sale against Lahaina's $750,000 obligation.