A04A1511. HICKS et al. v. SUMTER BANK & TRUST COMPANY.
(604 SE2d 594)

RUFFIN, Presiding Judge.

Sumter Bank & Trust Company ("the Bank") sued Danny and Valerie Hicks for amounts allegedly owed on three promissory notes. The Hickses answered, claiming that fraud barred the Bank from recovering under the notes. They also alleged a counterclaim for

---

[16] See *Cotting v. Cotting,* 261 Ga. App. 370, 371-372 (2) (582 SE2d 527) (2003); *Easler v. Fuller,* 169 Ga. App. 110, 111 (311 SE2d 534) (1983).

fraud and misrepresentation. The Bank moved for summary judgment on its claims and on the Hickses' counterclaim. The trial court granted the motion and entered a final judgment for the Bank on the notes. Finding no error, we affirm.

"Summary judgment is appropriate when the evidence, viewed favorably to the nonmovant, establishes that no genuine issues of material fact remain and that the moving party is entitled to judgment as a matter of law."[1] So viewed, the record shows that real estate developer Danny Hicks obtained financing from the Bank for a development project in Crisp County. When Danny completed the project, he contacted the Bank to discuss financing opportunities for another Crisp County development. At that point, Ben Dupree, a vice president with the Bank, recommended that Danny purchase a piece of property in Sumter County that the Bank had acquired through foreclosure ("the property" or "the Sumter County property"). According to Danny, Dupree told him that the Sumter County property "was ready for development" and showed him a subdivided plat of the property that had been prepared for the Bank.

Danny visited the property with Dupree and observed that it had been semi-developed and laid out in lots. The plat, however, had not been recorded, and Danny and Dupree determined that the plat and the size of certain lots needed to be revised to comply with new Sumter County guidelines. Dupree agreed to hire Earl Dunmon, a surveyor/engineer, to conduct a soil study on the property and revise the plat.

Danny subsequently met with Dupree and Dunmon in March or April 2001. Dunmon reported to Danny and Dupree that the "soils were adequate" and that the Sumter County Environmental Officer had assured him "that everything was ready to record a revised plat and that the development could begin."

Based on his discussions with Dupree, Danny decided to buy the Sumter County property from the Bank and signed a sales contract on April 30, 2001. The contract provided that Danny would "be permitted to enter upon the Property to inspect the Property, to make surveys, and for any other reasonable purpose" prior to closing. Danny closed on the property on May 23, 2001. That same day, Danny gave the Bank a Commercial Deed to Secure Debt and Security Agreement securing his payment for the property.

In connection with the Sumter County property's purchase and development, Danny and Valerie Hicks executed two promissory notes to the Bank on December 6, 2001. Those notes, referred to as

---

[1] *Lahaina Acquisitions v. GCA Strategic Investment Fund,* 261 Ga. App. 800 (584 SE2d 51) (2003).

Notes 15 and 16, were partially secured by the property. On February 25, 2002, Danny provided a third promissory note to the Bank relating to the purchase of a boat. Although it is not clear from the documents in the record, the Bank alleges in its complaint that this note, referred to as Note 10, was also partially secured by the Sumter County property.

After closing on the property, Danny discovered "a number of problems" with his proposed residential development project. In November 2001, the Sumter County inspector, the chairman of the Sumter County Planning Commission, and Earl Dunmon signed and authorized the recorded revised plat as being in compliance with all applicable regulations and codes. At some point during the next month, however, Danny learned from Dunmon that a required soil erosion plan had not been completed for the property and, consequently, that the plat had been erroneously recorded. Furthermore, in the spring of 2002, Danny applied to Sumter County for permits to place 37 septic systems on the property. The Sumter County Environmental Officer responded that the planned development was not "legal" and that Danny could not place homes or septic systems on the land. Finally, in August 2002, a new soil analysis revealed that approximately one-half of the property "was not usable and could not be developed."

On December 9, 2002, the Bank informed the Hickses that they were in default on Notes 10, 15, and 16. It filed suit ten days later, seeking payment. The Hickses answered, asserting that the Bank had engaged in fraud, precluding recovery under the notes. They also alleged a separate counterclaim for fraud and misrepresentation. Specifically, they claimed that the Bank fraudulently induced them to enter the promissory notes by failing to disclose material information regarding the Sumter County property and by concealing defects that rendered the property unsuitable for development.

The Bank moved for summary judgment on its claims and the Hickses' counterclaim, asserting that it had established a prima facie case for recovery on the promissory notes and that the record contained no evidence of fraud. The trial court agreed. We find no error.

The Hickses' fraud allegations revolve around Dupree's statements that the property was ready for development and Dunmon's assurances that the property had "adequate" soil and, under the revised plat, complied with all applicable rules and regulations. To establish fraud or misrepresentation, the Hickses must show: (1) a false representation by the Bank; (2) scienter; (3) an intention to induce them to act or refrain from acting in reliance upon the

representations; (4) justifiable reliance; and (5) damages.[2] They cannot make this showing here.[3]

1. *Dupree's statements.* Pretermitting whether Dupree knew of any problems facing the property's development, his statements cannot support the Hickses' fraud allegations. Reliance is an essential element of both fraud and negligent misrepresentation, and that reliance must be justified.[4] Furthermore, "where the representation consists of general commendations or mere expressions of opinion[,] the party to whom it is made is not justified in relying upon it and assuming it to be true; he is bound to make inquiry and examination for himself so as to ascertain the truth."[5]

In our view, Dupree's statements that the property was ready for development and could support a residential project were "expressions of opinion, general commendations, and sales puffing."[6] Danny, a real estate developer, had an obligation to inquire about the property's developmental status himself. And although the sales contract gave him the right to enter and inspect the property prior to the May 23, 2001 closing, he did not independently investigate whether it could be developed for residential purposes. Moreover, the record shows that Danny knew before purchasing the property that the land plat needed to be revised to comply with county regulations.

Danny was not justified in relying on Dupree's assertions that the property was "ready for development" or could be developed in a certain way.[7] Accordingly, such statements cannot support a counterclaim for fraud or misrepresentation or a fraud defense to the

---

[2] See *Riverbend Ford-Mercury v. Kirksey*, 196 Ga. App. 307, 310 (2) (395 SE2d 898) (1990).

[3] On appeal, the Hickses do not challenge the trial court's finding that the Bank established a prima facie case for recovery under the notes. Instead, they argue that questions of fact remain regarding their fraud defense and counterclaim. See *Smith v. Gordon*, 266 Ga. App. 814 (1) (598 SE2d 92) (2004) (" 'A creditor in possession of a valid and signed promissory note has a prima facie right to repayment, unless the debtor can establish a valid defense.' ").

[4] See *Anderson v. Atlanta Committee for the Olympic Games*, 261 Ga. App. 895, 900 (2) (584 SE2d 16) (2003); *Riverbend*, supra.

[5] (Punctuation omitted.) *U-Haul Co. of Western Ga. v. Dillard Paper Co.*, 169 Ga. App. 280, 281-282 (312 SE2d 618) (1983). The Hickses have pointed to no evidence that the parties had a confidential relationship that might demonstrate justifiable reliance, and the record shows that the parties engaged in an arms-length business transaction that did not involve such a relationship. See *Smith*, supra at 816 (1) (b); *Sage Technology v. NationsBank*, 235 Ga. App. 405, 408 (4) (509 SE2d 694) (1998).

[6] *U-Haul*, supra at 281. See also *Miller v. Clabby*, 178 Ga. App. 821, 822 (344 SE2d 751) (1986) (property seller's statement that field was suitable for raising horses was an expression of opinion on which buyer was not entitled to rely).

[7] See id. at 823 ("When the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means he will not be heard to say, in impeachment of the contract of sale, that he was deceived by the vendor's representations.") (punctuation omitted); *U-Haul*, supra at 281-282 (purchaser of warehouse not justified in relying on real estate broker's assurances that warehouse "was of 'excellent construction[,] had been well maintained,' . . . was 'one of the

promissory notes.[8]

2. *Dunmon's statements.* We similarly question whether Danny was entitled to forego any independent investigation of the property's potential based on assurances from Dunmon, who, according to Danny, was hired by the Bank.[9] More fundamentally, however, none of Dunmon's allegedly false statements can be imputed to the Bank.

In granting summary judgment, the trial court found Dunmon to be an independent contractor. The Hickses challenge this ruling on appeal, asserting that Dunmon should be viewed as the Bank's agent. We disagree.

Under Georgia law,

> [t]he true test of whether the relationship is one of employer-employee or employer-independent contractor is whether the employer, under the contract either oral or written, assumes the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract.[10]

Danny testified that the Bank hired Dunmon. But the Hickses offered no evidence that the Bank had the right to control the time, manner, or method of Dunmon's work, and Dunmon testified that his services were "not conducted at the direction" of the Bank. The record thus does not support a finding that Dunmon, a land surveyor hired to survey the Sumter County property, was the Bank's agent. On the contrary, the evidence shows that he was an independent contractor.[11]

Furthermore, the record contains no evidence that the Bank knew Dunmon had falsely represented the condition of the property, its compliance with regulations, or its soil adequacy. On appeal, the Hickses note that, when Danny informed the Bank in the spring of 2002 about problems facing the development, the Bank offered to pay for a revised plat and hire a new soil expert. Citing these facts, they

---

best warehouse buildings in the City of Atlanta,' and . . . was sound"); *Bimbo Builders v. Stubbs Properties*, 158 Ga. App. 280, 281-282 (1) (279 SE2d 730) (1981) (trial court properly rejected claim by real estate developer that seller fraudulently induced him to purchase property by providing him with a land plat that failed to identify several streams and a swampy condition on the property; " '[s]uch things as the soil, timber or springs on land are open to inspection, and the purchaser is wilfully negligent if he fails to look and see for himself, and neither law nor equity will relieve him from his own want of diligence' ").

[8] See *Miller*, supra; *U-Haul*, supra.

[9] Both Dunmon and the Bank contend that Danny Hicks hired Dunmon. For purposes of summary judgment, however, we construe this factual dispute in favor of the Hickses.

[10] (Punctuation omitted.) *Allrid v. Emory Univ.*, 249 Ga. 35, 39-40 (2) (285 SE2d 521) (1982).

[11] See id.; *Forte v. Lewis*, 241 Ga. 109-110 (2) (243 SE2d 38) (1978).

argue that the Bank knew that the property could not be developed and that Dunmon had misrepresented its status. This remedial action, however, took place in the spring of 2002, well after Danny purchased the property and the Hickses signed the promissory notes. Thus, it does not demonstrate that the Bank used false information to induce the property sale or execution of the promissory notes.[12]

Given Dunmon's status as an independent contractor, as well as the Bank's lack of knowledge regarding the truth of his statements, the Bank cannot be held liable for any alleged fraud or negligence committed by Dunmon.[13] Accordingly, to the extent the Hickses' fraud and misrepresentation allegations rest on these statements, the trial court properly granted summary judgment to the Bank.

*Judgment affirmed. Eldridge and Adams, JJ., concur.*

DECIDED SEPTEMBER 9, 2004.

*Begner & Begner, Alan I. Begner, Katherine K. Wood*, for appellants.

*Garner, Willis, Sweat & Goldsmith, Kimberly A. Reid*, for appellee.

---

[12] On the contrary, it potentially shows that the Bank was trying to protect its investment in the development.

[13] See OCGA § 51-2-4 ("An employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer."); *Smiley v. S & J Investments*, 260 Ga. App. 493, 497 (2) (580 SE2d 283) (2003) (absent some evidence that home sellers knew or reasonably should have known that independent contractor's structural engineering report contained false material facts, home buyers had no negligent misrepresentation claim against the sellers based on the report) (physical precedent only); see also *Forte*, supra at 110 (2) (statements of independent contractor surveyor not binding on property seller as admissions against interest).