## A04A2284. ARP v. UNITED COMMUNITY BANK et al.
### (612 SE2d 534)

BARNES, Judge.

Danny Lee Arp appeals the grant of summary judgment to United Community Bank, formerly known as Peoples Bank of Mc-Caysville, a trade name of Peoples Bank of Fannin County, Mc-Caysville Branch, on his claims that the Bank negligently or fraudulently failed to procure a life insurance policy on his wife. On appeal, Arp contends the trial court erred by granting summary judgment to the Bank when genuine issues of material fact existed about the Bank's fraudulent or negligent acts.

1. The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Further, when ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion, *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988), and the trial court cannot resolve the facts or reconcile the issues. *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (288 SE2d 49) (1981). When we review the grant of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Desai v. Silver Dollar City, Inc.*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997). Also, this court reviews the grant of summary judgment on the record as it existed when the court ruled and not on how the record appears after subsequent supplementation or amendment. *Nowell v. Fain*, 174 Ga. App. 592, 593 (330 SE2d 741) (1985).

2. Viewed as our law requires, the evidence shows that Arp and his wife, Tammy L. Arp, were long-time customers of the Bank, and in 2001 they were refinancing their house with the Bank and dealing with Vernon Smith as their loan officer. In an earlier refinancing of their home, they both had term life insurance. When they arrived at the bank to close the loan, however, another loan officer, Frank Shinpaugh, closed their loan because Smith was unavailable.

Although not required by the Bank to obtain the loan, according to Arp, they wanted a term life policy on both Arp and his wife, and had discussed this with Smith. Smith told them that he was going to get insurance for both of them because he understood that Arp's brother would not guarantee the loan without the insurance. Nevertheless, only Arp signed the application for the life insurance that is in the record, even though Tammy Arp signed other loan documents,[1]

---

[1] Contained in the record are the following documents signed by both Mr. and Mrs. Arp: the

and Arp submitted a copy of a life insurance disclosure form containing Mrs. Arp's signature. Arp contended that his wife signed everything that he signed. Her signature, however, is not found on the copies of the insurance disclosure form retained by the Bank or the application for the insurance, and other documents in the record involving the insurance are not signed by her.[2] And, Arp has not submitted any insurance documents containing her signature.

Mrs. Arp died on July 15, 2001, of a brain aneurysm. About a year after her death, one of her relatives informed Arp that his wife was not covered by the insurance policy. Arp investigated the situation with the Bank and the insurance company, and after he found no coverage for Mrs. Arp, he filed suit against the Bank, contending that he entered into a written contract with the Bank for $50,000 in term life insurance for his wife and himself. He further contended that his wife executed documents "regarding the execution of [the term policy]," that they both signed a notice of the right to cancel the loan, and that his wife signed the loan statement. He further alleged that the insurance company did not receive a copy of the insurance application for his wife, and that the Bank acted fraudulently to deny him his rights to the insurance policy. As a result, he demanded that he receive $50,000 plus pre- and post-judgment interest.

The Bank answered denying liability and asserted a counterclaim for $50,016.46, the principal owning on the loan, interest of $2,833.26, and the 15 percent attorney fees authorized by OCGA § 13-1-11. The Bank's counterclaim alleged that Arp was in default on his loan and, therefore, it had accelerated the entire amount due. In his deposition, Arp denied that he was in default on his loan. After discovery, the Bank moved for summary judgment contending that Arp could not prove a cause of action for actionable fraud because he could not have reasonably relied upon anything Shinpaugh may have said about coverage for Mrs. Arp as the documents he signed clearly only provided coverage for him, and it could not be liable in negligence as it had no duty to procure a policy for Mrs. Arp.

The Bank supported its motion with Shinpaugh's affidavit and the documents signed at the loan closing. Shinpaugh's affidavit stated that he was the loan officer who facilitated the closing of the

---

life insurance disclosure form filed by Arp, the note, a disclosure statement for the loan showing a charge for the insurance premium of $4,830, a disbursement request and authorization that acknowledged that the Arps were not getting credit life insurance, an agreement to provide insurance on the home, a notice of the required insurance for the house, the security deed, the owners' affidavit, the good faith estimate of settlement costs, the settlement statement, the notice of the right to receive a copy of the appraisal, and the agreement to replace documents.

[2] The record contains the following documents that contain only Danny L. Arp's signature: The insurance application, the life insurance disclosure form from the Bank's records, and the assignment of the policy proceeds to the Bank.

Arps' loan. He also stated that he presented and explained the loan documents to the Arps and gave them time and opportunity to read the documents. Although the Bank did not require the Arps to get life insurance, the Arps agreed that Arp would get life insurance and he applied for the policy. Although the Bank was not affiliated with the life insurance company, if Mrs. Arp had applied for a policy the Bank would have received a larger commission. The premium was for a single policy, and Shinpaugh denies saying that the premium was for two people. Mrs. Arp "never applied for life insurance and never asked [the Bank] to assist her in doing so," he said.

Shinpaugh's affidavit explained how he calculated the premium due using the form supplied for such purposes by the insurance company. According to Shinpaugh, Arp selected a 15-year level term policy in the amount of $50,000 and Arp was 40 years old at the time. Based on the chart, the premium for Arp's policy would be $4,830, the amount Arp was charged.

Arp responded stating that genuine issues of material fact remained for trial and attaching his affidavit. The trial court granted summary judgment to the Bank, stating that "all parties to a contract have a duty, an obligation, to inform themselves as to the matters contracted for" and that Danny L. Arp was the insured and not his wife. This appeal followed.

3. On appeal, Arp contends the trial court erred by granting summary judgment on his fraud claim because he contends a genuine issue exists on whether the Bank's agents, Smith and Shinpaugh, promised him that the Bank would get insurance for his wife. He relies on the statements in his affidavit and his deposition testimony that Smith and Shinpaugh told him that the Bank would get insurance on his wife and that the policy would cover both of them. Shinpaugh's affidavit, however, denied making any such statements, and no affidavit or deposition from Smith is in the record. Even though such conflicting statements might otherwise preclude the grant of summary judgment, it does not in this case because these contradictions are not relevant and material to the issue on which the trial court granted summary judgment. *Raven v. Dodd's Auto Sales & Svc.*, 117 Ga. App. 416, 422 (4) (160 SE2d 633) (1968). Moreover, the rules on admissibility of evidence apply in these proceedings, and hearsay has no probative value unless it is part of the res gestae. *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 65 (2) (397 SE2d 576) (1990).

Arp's deposition testimony conflicts with Shinpaugh's affidavit in some respects, but it is also self-contradictory. For example, in one place Arp contends that he did not have a chance to read the paperwork because by explaining the documents, the Bank kept the Arps from reading them, but Arp acknowledges that he could have

read them if he wanted to do so, and he was given the opportunity to read the note, even though Shinpaugh did not really want him to read it. He also states that he did not read anything. He also states that Shinpaugh did not explain how he calculated the premium. Further, even though in part of his deposition he testified that he did not receive a copy of the documents from the closing, he also said he was not sure if his wife put any paperwork in her purse. He said that he could not recall whether he left the Bank with any paperwork, but his wife probably did. He also testified that the documents from the closing were at home. Arp admitted that he had not seen a copy of any insurance application which his wife signed and he was to be the beneficiary.

Under our law a "party who can read must read, or show a legal excuse for not doing so," and that our "law does not create a confidential or fiduciary relationship between a financial institution and those with whom it deals." (Citations and punctuation omitted.) *Gilliard v. Fulton Fed. S & L Assn.*, 182 Ga. App. 678, 679 (356 SE2d 734) (1987). Indeed, "there are few rules of law more fundamental than that which requires a party to read what he signs and to be bound thereby." (Citations omitted.) *Russell v. Barnett Banks*, 241 Ga. App. 672, 675 (527 SE2d 25) (1999). Further, no confidential relationship exists "between a bank and its customers merely because the customer had advised with, relied upon, and trusted the bankers in the past. . . . There is, moreover, particularly no confidential relationship between lender and borrower or mortgagee and mortgagor for they are creditor and debtor with clearly opposite interests." Id. at 673-674. "The mere fact that one reposes trust and confidence in another does not create a confidential relationship." (Citation omitted.) *Trulove v. Woodmen of the World Life Ins. Society*, 204 Ga. App. 362, 365 (1) (419 SE2d 324) (1992). As no evidence exists of any special circumstances that would have created a confidential or fiduciary relationship between the Arps and either Smith or Shinpaugh, the Arps were not authorized to rely on their alleged representations about the insurance, "to the utter exclusion of undertaking to read the loan documents that were subsequently provided to them at the time the loan actually closed." (Citations omitted.) *Gilliard v. Fulton Fed.*, supra, 182 Ga. App. at 679.

"The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." (Citation and punctuation omitted.) *Stiefel v. Schick*, 260 Ga. 638, 639 (1) (398 SE2d 194) (1990). Therefore, justifiable reliance by Arp on the alleged statements by Smith and Shinpaugh is an essential element of his fraud claim. As he admits that he could have read the insurance documents if he had wanted to do so and that he did not, he cannot

establish that he justifiably relied upon the statements by the Bank's employees. Under the circumstances, the trial court did not err by granting summary judgment to the Bank on this claim. This is particularly true as one of the documents he signed allowed him 20 days in which to cancel the policy if it was not what he wanted. "So long as one essential element under any theory of recovery is lacking the defendant is entitled to summary judgment as a matter of law irrespective of any issues of fact with regard to other essential elements." (Citation and punctuation omitted.) *Butler v. Terminix Intl.*, 175 Ga. App. 816, 818 (2) (334 SE2d 865) (1985).

Further, even if valid, Mrs. Arp's signature on the insurance disclosure document adds nothing to Arp's claim because the document provides that the life insurance was voluntary and not required and will not be provided unless the party signed and agreed to pay the additional costs. The document further provides that only the person or persons named above will be insured for life insurance, and no person is named above. Thus, this form does not show that Mrs. Arp applied for life insurance.

4. Arp's negligence claim must also fail even though one who undertakes to procure insurance for another and is guilty of negligence can be liable for the limits of the policy. *Beavers Ins. Agency v. Roland*, 135 Ga. App. 263 (217 SE2d 484) (1975). See also *Simmerson v. Blanks*, 149 Ga. App. 478, 479 (2) (254 SE2d 716) (1979). Nevertheless, Arp was required to read what he signed and was not entitled to rely on the alleged statements by the Bank's employees. *Gilliard v. Fulton Fed.*, supra, 182 Ga. App. at 679. The evidence of record in this case indicates that the Arps "either decided not to purchase the insurance or failed to familiarize themselves with the contents of the disclosure form and to take the steps necessary to procure the insurance that was being provided." Id.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MARCH 21, 2005.

*William W. Bond, Jr.*, for appellant.
*Stites & Harbison, James T. White, Paul J. Pontrelli*, for appellees.