A08A0365. COOTE v. BRANCH BANKING AND TRUST COMPANY et al.

(664 SE2d 554)

Andrews, Judge.

Omar Coote appeals from the summary judgment granted to all defendants in his suit claiming fraud, negligence, and RICO[1] violations as a result of his purchase of real property from defendant Rodney Cooley, financing for the purchase by defendants Kevin Lubitz, Mario Abi-Sarkis, and their employer Branch Banking and Trust Company (BB&T), appraisal of the property by defendants JA Services, LLC, and its employees Tawana Kerr and Mark Jackson II, and the closing of the transaction by defendants' attorney William E. Brumby II and his professional corporation.[2]

Upon motion for summary judgment, it is the movant's burden to show that no genuine issue of material fact is at issue and that he is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). The movant may discharge such burden by reference to affidavits, depositions, and other documentary evidence of record showing no evidence in support of the nonmovant's case. Id. After the movant discharges his burden, the nonmovant cannot rest on his pleadings, but instead must come forward with evidence establishing a triable issue. OCGA § 9-11-56 (e); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). We review the trial court's decision on motion for summary judgment de novo, "viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law. [Cit.]" *Gilhuly v. Dockery*, 273 Ga. App. 418, 418-419 (615 SE2d 237) (2005).

So viewed, the evidence here was that, on April 3, 2002, Cooley, a real estate investor, purchased the property at 65-A Spring Lane, Atlanta for $50,000. He financed the purchase of the property

---

[1] Georgia Racketeer Influenced and Corrupt Organizations Act.

[2] The motion of BB&T to dismiss this appeal because Coote's brief was filed four days late is hereby denied. OCGA § 5-6-30.

through BB&T, and an appraisal was ordered by BB&T from JA Services for underwriting purposes. The appraisal was dated March 22, 2002.

Coote, an experienced real estate investor, became interested in purchasing the property for rental/investment purposes shortly after Cooley's purchase. He became aware of the property from one of the people who gave him information on potential investment properties. Coote asked Cooley what the value of the property was and Cooley said they would have to get an appraisal. Coote personally walked through the property with Cooley but did not have an independent inspector look at the property. Lubitz of BB&T called Coote and told him the appraisal came back at $130,000. This was the appraisal that had been done in connection with Cooley's purchase of the property at the request of BB&T. Coote did not obtain an appraisal of his own, nor did he ask to see the appraisal done for BB&T prior to entering into a contract to purchase the property. The appraisal states on its cover page that it was done "FOR BB and T." The signature page of the appraisal also lists as the lender/client "BB and T."

On April 6, 2002, Coote and Cooley entered into a contract for Coote's purchase of 65-A Spring Lane for $110,000. Coote gave his credit information over the telephone to Lubitz, who arranged financing for the purchase through BB&T. The closing on the property took place on April 23 at the offices of William Brumby II. Financing was set up as a first and second mortgage in the amounts of $75,000 and $35,000.

Approximately six months later, Coote attempted to refinance the property through BB&T. When he was unable to obtain refinancing, Coote sued BB&T and the other defendants.

1. In his first enumeration of error, Coote argues that the trial court erred in finding it was immaterial whether the appraisal was represented as "new" or was the one used for the earlier Cooley closing.

In a footnote, the trial court states that

Mr. Coote claims that Mr. Lubitz represented that the appraisal was new for this closing, while BB&T's statement of facts shows that BB&T actually used the appraisal they had on file from a closing on the same property 3 weeks earlier. The objective facts confirm BB&T's averment that the appraisal was done for the first closing. For purposes of these Motions, the difference is immaterial.

We consider this enumeration in conjunction with enumerations 2, 3, and 5 which contend that the trial court erred in finding that the defendants were entitled to summary judgment on Coote's fraud claim.

2. Enumerations 2, 3, and 5 are that the trial court erred in concluding that the appraisal's valuation of the property was not a statement upon which Coote could justifiably rely; that the record contained neither a false representation nor any proof of scienter or intention to deceive; and that the record contained insufficient evidence of fraud to support Coote's RICO claim.

To succeed on a claim for fraud,

> the plaintiff must show that the defendant made a false, material representation of an existing fact with knowledge that it was false or with reckless disregard as to whether it was true and that it was with the intent that it be acted upon by the plaintiff; and, further, that the plaintiff acted upon the misrepresentation in reasonable reliance of its truth in a manner reasonably foreseeable by the defendant and to the plaintiff's proximate injury.

*Brown v. Techdata Corp.*, 238 Ga. 622, 625 (234 SE2d 787) (1977). "Questions of fraud, the truth and materiality of representations made by a defendant, and whether the plaintiff could have protected himself by the exercise of proper diligence are, except in plain and indisputable cases, questions for the jury." Id.

First, as found by the trial court, we agree that the appraisal was an opinion of the value of the real estate upon which Coote was not entitled to rely. See *Wilson v. Prudential Indus. Properties*, 276 Ga. App. 180 (1) (622 SE2d 890) (2005); *Anderson v. Atlanta Committee for the Olympic Games*, 261 Ga. App. 895, 899 (2) (584 SE2d 16) (2003); *Smalls v. Blueprint Dev.*, 230 Ga. App. 556, 557 (1) (497 SE2d 54) (1998); *Doe v. Prudential-Bache/A.G. Spanos Realty Partners*, 222 Ga. App. 169, 176 (5) (474 SE2d 31) (1996).

Even assuming, as did the trial court, that, as alleged by Coote, Lubitz advised him not to get his own appraisal, Coote could not reasonably rely on Lubitz in this regard, as there was no confidential relationship between them or between BB&T and Coote. *Moore v. Bank of Fitzgerald*, 225 Ga. App. 122, 125 (2) (483 SE2d 135) (1997); see also *Albee v. Krasnoff*, 255 Ga. App. 738, 741 (2) (566 SE2d 455) (2002).

Also, Coote, although an experienced real estate investor, took no steps to verify for himself that the stated value of the property was accurate.

"While concealment of material facts may amount to fraud if the other party could not by exercising ordinary care discover the facts concealed, a person has no obligation to disclose information that is equally available to both parties." Generally, whether ordinary care was exercised is a question for a jury to resolve; however, one may fail to exercise ordinary care as a matter of law.

(Citations and footnotes omitted.) *Donchi, Inc. v. Robdol, LLC*, 283 Ga. App. 161, 165 (1) (b) (640 SE2d 719) (2007). See also *Browning v. Richardson*, 181 Ga. 413, 415 (182 SE 516) (1935).

We find, as did the trial court, that Coote failed to exercise ordinary care for his own interests as a matter of law.

Regarding the trial court's conclusion that no evidence indicating scienter had been produced, we concur. Lubitz testified in his deposition that he had no reason to question the value of the property as stated in the appraisal. Coote has come forth with no evidence to show that Lubitz, in fact, was aware the property was not worth the stated $130,000. As stated above, Coote was not entitled to rely upon the appraisal in any event.

The trial court also correctly concluded that there was insufficient evidence of fraud to support a RICO violation. As the trial court concluded, and we agree, there is no valid claim for fraud here, that claim will not form a predicate act for RICO purposes. *Mays v. Askin*, 262 Ga. App. 417, 422 (3) (585 SE2d 735) (2003).

Based on these conclusions, we agree with the trial court that whether the appraisal was done for the Cooley closing or for Coote's closing is immaterial.

3. Coote's fourth enumeration is that the trial court erred in finding no duty owed by BB&T to Coote in the negligence context.

To state a cause of action for negligence in Georgia, a plaintiff must show (1) a legal duty to conform to a standard of conduct raised by law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) loss or damage . . . from the breach.

(Citation omitted.) *Shortnacy v. North Atlanta Internal Medicine*, 252 Ga. App. 321, 325 (2) (556 SE2d 209) (2001).

As concluded by the trial court, there is no such duty owed to Coote by BB&T or the other named defendants. *Moore v. Bank of Fitzgerald*, supra.

*Judgment affirmed. Ruffin, P. J., and Bernes, J., concur.*

DECIDED JUNE 24, 2008 — 

*Ralph Washington*, for appellant.

*Quirk & Quirk, Neal J. Quirk, Brendan H. Parnell, Smith, White, Sharma & Halpern, Kenneth I. Sokolov, Swift, Currie, McGhee & Hiers, James T. McDonald, Jr., Charles W. Billingsley, Jr., Lindenbaum & Young, Patrick I. Lucas*, for appellees.