A10A1107, A10A1108. BAXTER et al. v. FAIRFIELD FINANCIAL SERVICES, INC. et al.; and vice versa.
(704 SE2d 423)

MIKELL, Judge.

These companion appeals arise out of a lawsuit filed by Fairfield Financial Services, Inc. (the "Bank") against appellants Nathan Baxter, Tim Burgess, and Zach W. McLeroy (the "Guarantors"), seeking to recover the outstanding balances owed on notes upon which appellants served as guarantors. The parties filed motions for summary judgment. The Bank argued that it was entitled to judgment as a matter of law on its breach of contract claims and to attorney fees. The Guarantors argued that the Bank's lawsuit was barred by res judicata as a result of a final judgment entered in a related case in Alabama. The trial court denied both motions and

---

granted certificates of immediate review to both parties. We granted the Bank's and the Guarantors' applications for interlocutory review. In Case No. A10A1107, the Guarantors appeal the denial of their motion, and in Case No. A10A1108, the Bank appeals the denial of its motion. We affirm the denial of the Guarantors' motion for summary judgment in Case No. A10A1107 and reverse the denial of the Bank's motion for summary judgment in Case No. A10A1108.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

The record shows that the Bank, a collateral agent for a syndicated loan, provided financing to Sapphire Beach West Development, LLC ("Sapphire"), to purchase and redevelop hurricane-damaged condominiums in Alabama. Sapphire executed several promissory notes in the aggregate principal amount of $23,360,000 ("First Priority Notes") on or about June 3, 2005, and each of the Guarantors executed an Unconditional Guaranty of Payment and Performance (the "Guaranties"), which provided that they unconditionally and irrevocably guaranteed the payment of the notes extended to Sapphire. The Guarantors each held a membership interest in Sapphire. On March 9, 2007, Sapphire executed another promissory note in the amount of $2,420,000 ("Second Priority Note"), and each of the Guarantors executed Guarantees pertaining to the Second Priority Note as well. The project failed, and litigation ensued, first in Alabama, then in Georgia.

On or about June 11, 2007, some of the owners of the damaged condominium units (the "Participating Owners") filed a declaratory judgment action in Alabama against Sapphire, the Bank, and other defendants, requesting that the court declare their liens to be superior to any other encumbrances on the property and seeking the foreclosure of their vendor's and equitable liens on the property (the "Alabama action"). The Participating Owners had a stake in Sapphire's project because they had opted to receive new units in the redeveloped condominiums in return for their conveyance of the interest in their damaged units to Riverbrooke Capital Partners,

---

[1] *Dabbs v. Key Equip. Finance*, 303 Ga. App. 570 (694 SE2d 161) (2010), citing *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

LLC ("Riverbrooke").[2]

On or about January 28, 2008, the Bank filed the instant action against the Guarantors seeking to recover the outstanding balance of the Notes totaling $25,780,000 (the "Georgia action"). On March 26, 2008, the Guarantors moved to stay the Georgia action pending the outcome of a court-ordered mediation in the Alabama action. In their motion, the Guarantors indicated that because of the overlap between the actions, they had agreed to participate in the mediation in Alabama, with the hope that the entire matter could be successfully resolved. The trial court granted the motion to stay in part, staying the case for 90 days, subject to the right of any party to conduct discovery related to filing a summary judgment motion.

On or about April 28, 2008, the Bank filed a third-party complaint against the Guarantors in the Alabama action seeking indemnification for the costs incurred in defending the action. The Bank did not assert its right to collect the unpaid balance from the Guarantors in the Alabama action. The Guarantors did not file an answer or enter an appearance in the Alabama action. The Bank filed a "Motion to Make Default Judgments Final as to Damages Incurred to Date and Conduct Hearing on Damages of Third-Party Plaintiff," which the Alabama court granted in an order dated September 3, 2008. In the order, the Alabama court awarded final judgment in the amount of $909,487.11 to the Bank against the Guarantors for attorney fees and costs incurred in defending the action and "reserve[d] its right to conduct further hearings as it deem[ed] necessary and proper to make final and carry into effect the Court's default judgments for future defense costs."

On March 5, 2009, the parties to the Alabama action, including the Guarantors, entered into a settlement agreement that resolved the Alabama action. A few months later on June 8, 2009, the Alabama court entered its final order, granting the Bank's Motion for Entry of Final Judgment. The court ruled as follows:

> The claim of [the Bank] against [Sapphire] for judicial foreclosure is dismissed without prejudice or waiver of the right of [the Bank] to later initiate a non-judicial foreclosure of its mortgage; There be Judgment in favor of [the Bank] against [Sapphire] in the sum of $909,487.11. Said judgment is joint and several with the Court's previous judgment against [the Guarantors] of September 3, 2008. The

---

[2] Riverbrooke, also a member of Sapphire, purchased the property from the Sapphire Beach Condominium Association. Riverbrooke was owned and operated by Steven Hornyak and George F. Chandler, who developed the plan for the damaged property and sought financing from the Bank.

Court's Judgment against [the Guarantors] is affirmed. Other than as expressly set out herein, all claims remaining against [the Guarantors] are dismissed. This Order resolves all pending claims against all parties and constitutes a final adjudication of all claims in this matter and is without prejudice as to any other litigation including Fairfield Financial Services, et al. v. Baxter, et al., Civil Action File No. 08C-04159-2 pending before the State Court of Gwinnett County, State of Georgia [the instant action] or claims of any parties against Steve Hornyak and George "Jeff" Chandler.

The Guarantors argue that the Alabama court's final order bars the instant action.

### Case No. A10A1107

1. In three related enumerations of error, the Guarantors argue that the trial court erred in concluding that res judicata did not bar the instant action. We disagree.

OCGA § 9-12-40 codifies Georgia's basic common law rule of res judicata. The statute provides that

[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.[3]

"[F]or one action to act as a bar to a subsequent action, the two actions must share certain characteristics. First, the parties to the two actions must be identical and, second, the subject matter of the actions must also be identical."[4] Additionally, "the party against whom the doctrine of res judicata is raised must have had a full and fair opportunity to litigate the issues in the first action."[5]

The Guarantors argue that res judicata applies to bar the Georgia action because their alleged liability in both instances was

---

[3] OCGA § 9-12-40. See also *Karan, Inc. v. Auto-Owners Ins. Co.*, 280 Ga. 545, 546 (629 SE2d 260) (2006) ("Res judicata prevents a plaintiff from instituting a second complaint against a defendant on a claim that has already been brought, after having previously been adjudged not to be entitled to the recovery sought on that claim.") (punctuation omitted).

[4] *Lawson v. Watkins*, 261 Ga. 147, 148 (1) (401 SE2d 719) (1991).

[5] (Citations omitted.) *Fowler v. Vineyard*, 261 Ga. 454, 455-456 (1) (405 SE2d 678) (1991).

based on the same contractual agreement, the Guaranties. In support of this argument, the Guarantors rely on *Flagg Energy Dev. Corp. v. Gen. Motors Corp.*[6] and *Green v. Bd. of Directors of Park Cliff Unit Owners Assn.*[7] In our view, however, these cases do not warrant a finding that res judicata bars the instant action. In *Flagg*, the plaintiffs purchased turbine engines from one company that were manufactured by General Motors ("GM").[8] After becoming dissatisfied with the engines, the plaintiffs entered a settlement agreement with GM; and as a part of the settlement, GM assumed all of the duties of the seller under the original purchase order.[9] The plaintiffs filed an action in Connecticut against GM based upon the terms of the purchase order, and then filed a second action in Georgia, alleging a breach of the settlement agreement.[10] We concluded that the subject matter in both actions involved GM's duties under the settlement agreement; therefore, res judicata applied to bar the plaintiffs' Georgia claim.[11] In *Green*,[12] the plaintiff homeowner sued his condominium association for its failure to repair a roof in one action and to maintain the common areas in another.[13] We concluded that res judicata applied because both actions concerned the same subject matter, that is, the association's failure to maintain the complex in accordance with its bylaws and standards.[14]

Our holdings in *Flagg*[15] and *Green*[16] were not based on the fact that the claims in the actions arose from the same document. Rather, the inquiry was whether the subject matter was identical.[17] In the instant case, the subject matters in the two actions are not identical. The Alabama action concerned Sapphire's breach of its obligations under the mortgage documents entered into with the Participating Owners, which triggered the Guarantors' obligation to indemnify the Bank for the cost of the litigation. In contrast, the Georgia action concerned the Guarantors' breach of their contractual obligation to repay Sapphire's debt. We recognize that the subject matter of the

---

[6] 235 Ga. App. 540 (509 SE2d 399) (1998).

[7] 279 Ga. App. 567 (631 SE2d 769) (2006).

[8] *Flagg*, supra at 541.

[9] Id.

[10] Id.

[11] Id. at 542-543 (1).

[12] Supra.

[13] Id. at 569 (2).

[14] Id. at 570 (2).

[15] Supra.

[16] Supra.

[17] *Flagg*, supra at 542 (1); *Green*, supra at 569 (2).

actions is linked. But

> [t]he fact that the subject matter of different lawsuits may be linked factually does not mean that they are the same "cause" within the meaning of OCGA § 9-12-40. For that doctrine to act as a bar, the cause of action in each suit must be identical. . . . A cause of action has been defined as being "the entire set of facts which give rise to an enforceable claim." Where . . . some of the operative facts necessary to the causes of action are different in the two cases, the later [sic] suit is not upon the same cause as the former, although the subject matter may be the same, and even though the causes arose out of the same transaction.[18]

Accordingly, res judicata does not bar the instant action. Thus, the trial court's denial of the Guarantors' motion for summary judgment was correct.

### Case No. A10A1108

2. In this cross-appeal, the Bank appeals the denial of its motion for summary judgment on its breach of contract claim and its claim for attorney fees. In opposition to the Bank's motion, the Guarantors argue that they were fraudulently induced to execute the Guaranties, rendering them void and unenforceable. The Guarantors also maintain that the Bank breached the duty of good faith and fair dealing that is implied in every contract under Florida law. The trial court denied the Bank's motion for summary judgment, concluding that Florida law governed the Guaranties, and that under Florida law, the Guarantors raised genuine issues of material fact that precluded the entry of summary judgment in the Bank's favor. As explained in detail below, we conclude that the trial court erred.

3. In its first enumeration of error, the Bank argues that the trial court erred when it applied Florida law to the Guarantors' defenses and counterclaims related to the Guaranties, which sound in tort rather than contract. We agree.

The choice-of-law provision in the Guaranties provided as follows: "This Guaranty shall be governed by the laws of Florida." Citing *Young v. W. S. Badcock Corp.*,[19] the Bank argues that this provision applied only to enforcing the contractual duties and did not govern the tort defenses. We agree with the Bank that *Young*

---

[18] (Citations, punctuation and emphasis omitted.) *Morrison v. Morrison*, 284 Ga. 112, 115-116 (3) (663 SE2d 714) (2008).

[19] 222 Ga. App. 218 (474 SE2d 87) (1996).

demands that conclusion.

In *Young*, the dealership agreement at issue contained the following choice-of-law provision: "This Agreement and the terms hereof shall be governed by and construed in accordance with the laws of the State of Florida."[20] The plaintiffs in that case filed an action for fraudulent misrepresentation, asserting that the defendant misrepresented amounts owing to plaintiffs under the dealership agreement and made other fraudulent charges not contemplated by the agreement.[21] In determining whether the agreement's choice-of-law provision applied to the plaintiffs' tort claim, we emphasized the importance of the language used in the provision. Specifically, we concluded that the plaintiffs' tort claim was not governed by the choice-of-law provision in the agreement, because the provision "[did] not state that any and all claims arising out of the relationship between the parties shall be governed by Florida law."[22] Because the provision in *Young* limited itself to the terms of the agreement, Georgia law applied to the fraudulent representation claim because the representations allegedly occurred in Georgia.[23]

The same result is warranted here because the choice-of-law provision here is similar to that at issue in *Young*. The Guaranties state only that *"[t]his Guaranty"* is to be governed by Florida law. Since the alleged misrepresentations in the instant case, which are discussed below, occurred in Georgia, Georgia law governs the validity of the Guarantors' defenses sounding in tort. Therefore, we now turn to the issue of whether the Bank was entitled to summary judgment under Georgia law.

4. The Bank argues that the trial court erred in holding that a triable issue of fact exists regarding the Guarantors' claim that they were fraudulently induced to sign the Guaranties. We agree.

Sapphire originally had four members, the three Guarantors and Riverbrooke. The Guarantors claim that they were fraudulently induced to sign the Guaranties based on alleged statements made by Paul Williams, a loan officer employed by the Bank, about the creditworthiness of Hornyak and Chandler, who owned and operated Riverbrooke. According to the Guarantors, Williams told them that Chandler and Hornyak "were the Bank's strongest borrowers," "were loved at the Bank," and "were good people to do business

---

[20] (Punctuation omitted.) Id. at 218-219 (1).

[21] Id. at 218.

[22] Id. at 219 (1).

[23] Id. See also Symeon C. Symeonides, "Choice of Law in the American Courts in 1996," 45 Am. J. Comp. L. 447, 489 (V) (1) (1997) (whether noncontractual issues, such as claims arising in tort, are governed by the law of the state named in the choice-of-law provision depends upon the breadth of the language used in the provision).

with"; that the project was a "great deal"; and that the property that secured the loan had been appraised at $48.2 million. The Guarantors maintain that these representations were false. Even assuming the Guarantors are correct, however, they cannot show that they were fraudulently induced to enter the Guaranties under Georgia law.

"The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff."[24] In the instant case, the Guarantors' defense fails because they cannot establish the third element, justifiable reliance. It is well settled that "a bank owes no legal duty to act as a customer's legal or financial advisor."[25]

> [O]ur law does not create a confidential or fiduciary relationship between a financial institution and those with whom it deals. . . . Further, no confidential relationship exists between a bank and its customers merely because the customer had advised with, relied upon, and trusted the bankers in the past. There is, moreover, particularly no confidential relationship between lender and borrower or mortgagee and mortgagor for they are creditor and debtor with clearly opposite interests. The mere fact that one reposes trust and confidence in another does not create a confidential relationship.[26]

"A party can be held liable for fraudulently concealing a material fact only if the party has a duty to disclose or communicate the fact."[27] Here, the Bank had no such duty, because "a bank has no duty to advise a party who is contemplating serving as the guarantor for a bank loan about problems with the viability of the business venture financed by the loan."[28] Therefore, because there was no confidential relationship between the Bank and the Guarantors,

---

[24] (Citation, punctuation and footnote omitted.) *Serchion v. Capstone Partners, Inc.*, 298 Ga. App. 73, 76-77 (2) (679 SE2d 40) (2009).

[25] *First Union Nat. Bank of Ga. v. Gurley*, 208 Ga. App. 647, 648 (1) (431 SE2d 379) (1993).

[26] (Citations and punctuation omitted.) *Arp v. United Community Bank*, 272 Ga. App. 331, 334 (3) (612 SE2d 534) (2005). Accord *Hicks v. Sumter Bank & Trust Co.*, 269 Ga. App. 524, 527 (1), n. 5 (604 SE2d 594) (2004) ("arm's-length business transaction" does not involve confidential relationship) (citations omitted).

[27] (Citations omitted.) *Lilliston v. Regions Bank*, 288 Ga. App. 241, 245 (2) (653 SE2d 306) (2007).

[28] (Citations omitted.) Id. at 244 (1). See also *Gurley*, supra at 649-650 (1) (bank had no duty to communicate to guarantor "the various obstacles facing the successful completion of the project") (citation and punctuation omitted).

they could not justifiably rely on the Bank's statements.

Moreover, "where the representation consists of general commendations or mere expressions of opinion, the party to whom it is made is not justified in relying upon it and assuming it to be true; he is bound to make inquiry and examination for himself so as to ascertain the truth."[29] The statements alleged to have been made by Williams concerning Hornyak's and Chandler's financial situations were nothing more than mere "expressions of opinion, general commendations, and sales puffing."[30] The Guarantors and Hornyak and Chandler were business partners in Sapphire. Therefore, "[they] were in at least as good a position as the [Bank] to analyze [Hornyak's and Chandler's] financial condition, and their failure to investigate the matter showed a lack of due diligence."[31]

Similarly, Williams' alleged statement about the appraised value of the Alabama property does not establish justifiable reliance. We have held that an appraisal is simply an opinion of the value of real estate, upon which a buyer is not entitled to rely.[32] Had the Guarantors wished to obtain their own appraisal, they could have done so.

> In order for a genuine issue of material fact to exist as to justifiable reliance, there must be some evidence that the plaintiff exercised his duty of due diligence to ascertain the truth of the matter and to avoid damage. Although questions of due diligence often must be resolved by the trier of fact, that is not always the case. A party may fail to exercise due diligence as a matter of law.[33]

It follows then that "[f]raud cannot be the basis of an action if it appears that the party alleging the fraud had equal and ample opportunity to prevent it and yet made it possible through the failure to exercise due diligence."[34] Blind reliance precludes a fraud claim as

---

[29] (Punctuation and footnote omitted.) *Hicks*, supra at 527 (1).

[30] (Citations omitted.) *U-Haul Co. of Western Ga. v. Dillard Paper Co.*, 169 Ga. App. 280, 281 (312 SE2d 618) (1983) (statements of opinion concerning building's condition did not support fraud claim). Accord *Reeves v. Habersham Bank*, 254 Ga. 615, 617 (1) (331 SE2d 589) (1985) (statements regarding purchaser's financial condition); *Hicks*, supra (statements that property was ready for development).

[31] (Citations omitted.) *Reeves*, supra.

[32] *Coote v. Branch Banking & Trust Co.*, 292 Ga. App. 164, 166 (2) (664 SE2d 554) (2008) (even where the buyer was advised not to obtain his own appraisal, he could not reasonably rely on the bank's appraisal because there was no confidential relationship between them).

[33] (Punctuation and footnote omitted.) *Dyer v. Honea*, 252 Ga. App. 735, 737 (1) (557 SE2d 20) (2001).

[34] (Citation and punctuation omitted.) *Ledford v. Smith*, 274 Ga. App. 714, 726 (3) (618 SE2d 627) (2005).

a matter of law.[35]

The record shows that prior to any communication with the Bank about the project, two of the Guarantors, Burgess and McLeroy, met with Chandler and Hornyak to discuss the project upon Hornyak's invitation. Burgess testified that at that meeting, he and several others received a copy of the pro forma on the project and saw the appraisal of the real property. Additionally, he recalled that the potential investors were told that they would not incur any expense to participate in the project but would earn approximately 12 percent of $53 million. McLeroy also testified that he attended the meeting after receiving a call from Hornyak and that he was shown several documents, including the pro forma and appraisal. Baxter, the third appellee, testified that he had no communications with Hornyak or Williams until after he had already signed the Guaranty. Accordingly, as there was no confidential relationship between the Guarantors and the Bank, and because the Guarantors failed to exercise due diligence to protect their own interests, the Guarantors' defense that the Bank fraudulently induced them to enter into the Guaranties fails.

The Guarantors argue that granting summary judgment in the Bank's favor would be premature because the Guarantors filed a counterclaim for setoff and recoupment to recover the following damages: (1) the difference between the actual value of the property and the represented value; (2) the difference between the actual value of the project and the value it would have had if the Bank's misrepresentations had been true; (3) costs, fees, and interest paid to the Bank; (4) costs, fees, and expenses incurred due to the Bank's wrongful acts. This argument lacks merit.

"Under Georgia law, both setoff and recoupment are considered counterclaims."[36]

> A set-off allows the defendant to set off a debt owed him by the plaintiff against the claim of the plaintiff. A recoupment is a right of the defendant to have a deduction from the amount of the plaintiff's damages because the plaintiff has not complied with the cross-obligations or independent covenants arising under the contract being sued upon.[37]

There can be no setoff or recoupment here because there is no claim

---

[35] *Dyer,* supra at 738 (1).

[36] (Footnote omitted.) *Hill v. Green Tree Servicing,* 280 Ga. App. 151, 154 (2) (633 SE2d 451) (2006).

[37] (Footnotes omitted.) *Automated Print v. Edgar,* 288 Ga. App. 326, 330 (2) (654 SE2d 413) (2007). Accord *Imex Intl. v. Wires Engineering,* 261 Ga. App. 329, 339 (8) (583 SE2d 117) (2003).

that the Bank owed any debt to the Guarantors.[38] Additionally, any argument that the Bank breached a cross-obligation or independent covenant under the Guaranties is based on the defense of fraudulent inducement, which, as discussed above, lacks merit.[39]

In sum, because the Guarantors cannot establish the elements necessary to substantiate their defense of fraudulent inducement, the trial court erred in denying the Bank's motion for summary judgment. Accordingly, we remand the case to the trial court for proceedings consistent with this opinion, specifically to determine the amount owing to the Bank pursuant to the Guaranties.[40]

5. In light of our holding in Division 3, we need not address the Bank's remaining enumerations of error as they relate to other theories upon which the trial court relied to deny the motion for summary judgment, all of which ultimately depend upon a finding that a genuine issue of fact existed as to whether the Bank committed fraud.

*Judgment affirmed in Case No. A10A1107. Judgment reversed in Case No. A10A1108. Smith, P. J., and Adams, J., concur.*

DECIDED OCTOBER 15, 2010 —
RECONSIDERATION DENIED DECEMBER 2, 2010 — 

*Ichter Thomas, Cary Ichter, S. Renee Huskey,* for appellants.
*Weissman, Nowack, Curry & Wilco, Leigh M. Wilco, McGuire Woods, Robert J. Waddell, Jr., Charles J. Myers,* for appellees.

---

[38] See *Automated Print*, supra.

[39] Id.

[40] The Bank did not enumerate as error the trial court's ruling that the Bank was not entitled to attorney fees at the statutory rate provided by OCGA § 13-1-11; thus, the issue of attorney fees is resolved in the Guarantors' favor and will not be in dispute on remand.