**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 27, 2017**

# In the Court of Appeals of Georgia

A17A1085. McCABE et al. v. RAINEY et al.

BRANCH, Judge.

This appeal arises from a dispute between the two owners of a set of car wash limited liability companies (LLCs). Facing a suit by a bank for funds owed, the owners settled their own disputes in a written agreement under which defendant Rhett Rainey would become the manager of the enterprise and attempt to obtain refinancing to pay off the bank loan. Rainey later obtained a loan from his family, paid off the bank loan, and sold the car wash LLC, as he was authorized to do under the settlement agreement. Plaintiffs Patrick McCabe and his wife Dara then brought this action for breach of the settlement agreement, breach of fiduciary duty, and other claims. On appeal from the trial court's grant of summary judgment to Rainey, the McCabes assert inter alia that the grant was in error because genuine questions of

material fact remain as to Rainey's liability. We reverse in part and remand for further proceedings.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.

*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991) (emphasis omitted).

Thus viewed in favor of the McCabes, the record shows that in August 2004, the McCabes and Rainey filed articles of incorporation for Carnett's Lanier Express Real Co., LLC ("the Carnett's LLC") with the Georgia Secretary of State. Both the Carnett's LLC and its operating company LLC were owned entirely by a third LLC, Car Wash Partners, of which the McCabes owned 60% and Rainey's limited partnership, RK Rainey Real Estate LLLP, owned 40%. The three LLCs did business in Gainesville as "Carnett's Car Wash."

In February 2005, Patrick McCabe and the Car Wash Partners LLC entered into an operating agreement as to the Carnett's LLC. The operating agreement designated

2

McCabe as the "initial Manager" and the Car Wash Partners LLC as the 100% owning "Member" of the Carnett's LLC and provided that "[t]he Members and Managers shall perform their duties in good faith, in a manner they reasonably believe to be in the best interests of the [Carnett's] LLC, and with such care as an ordinarily prudent person in a like position would use under similar circumstances." The operating agreement also provided that "[n]o Member or Manager shall be liable to the LLC or to any other Member" for any business losses unless those losses "shall have been the result of fraud, deceit, gross negligence, willful misconduct, or a wrongful taking by the Member or Manager," and that a party granted discretionary powers "shall be entitled to consider only such interests and factors as it desires, including its own interests, and shall have no duty or obligation to give any consideration to any interest of or factors affecting the LLC or any other person."

In October 2012, Nicolet National Bank ("the Bank") sued the Carnett's LLC (as well as Patrick McCabe and Rainey, who had personally guaranteed the loan) to recover on an outstanding loan of $1.9 million secured by the car wash assets. The Carnett's LLC answered and apparently filed a cross-claim against McCabe and

3

Rainey personally, alleging that both men had violated the operating agreement.[1]

Faced with the prospect of a judgment in favor of the Bank, the McCabes, Rainey, his entities, and the three LLCs entered into a settlement agreement in July 2013 under which Patrick McCabe resigned as manager of the LLCs, replaced by Rainey, but with McCabe agreeing to provide "reasonable assistance . . . without compensation" for up to 5 hours a month. The McCabes also transferred 10% of their membership interest in Car Wash Partners to Rainey "or" his LLLP, making the McCabes and Rainey equal co-owners in that LLC.

Under the settlement agreement, the McCabes would "not be required to guarantee the new loan financing the existing" Nicolet loan, but were required to "cooperate in providing any requested information to obtain the loan" and "in executing loan documents, releases and dismissals . . . in a timely manner in order to obtain appropriate financing[.]" For his part, and in addition to becoming the "Manager" of the two LLCs, Rainey promised to make efforts on the LLCs' behalf including "personally guarantee[ing any] new loan," "refinanc[ing] the existing [Nicolet] loan," or "obtain[ing] any new financing he deems appropriate on terms

---

[1] The McCabes have failed to locate the cross-claim in the record before us; instead, they cite only the trial court's dismissal of this and other claims in March 2013.

acceptable to him as Manager," although if Rainey self-financed, he "shall not charge the company higher than market rate." Further, if any "new loan" went into default, Rainey could, "if [he] deemed [it] appropriate," and "in his sole discretion," sell the assets of the LLCs. The agreement also provided that Rainey "will not hire his wife to work" at the car wash and that he could enter into an operating contract with a franchisor, Cactus, "on terms he deems advisable in his sole discretion, and [without] any further signatures of [the McCabes]." At the same time as they executed the settlement agreement, the parties also executed amendments to the operating agreements of the three LLCs providing that "[t]o the extent that any of the provisions" of the amendments or the settlement agreement "conflict with the provisions" of the earlier versions of the operating agreements, the amendments, as incorporated into the settlement agreement, "shall govern and control."

In August 2013, the Bank entered into a settlement with McCabe, Rainey, and the Carnett's LLC under which those defendants would obtain new financing secured by the car wash and pay $1.8 million to the Bank. The defendants to the Bank suit also consented to a judgment of more than $2 million against them in the event that the $1.8 million payment was not timely made to the Bank. In September 2013, the McCabes authorized Rainey to borrow from his family on terms he deemed

5

appropriate, "in his sole discretion and in accordance with his fiduciary duties to the [Carnett's LLC]." On September 10, Rainey executed two notes in exchange for his family's loans in the amounts of $1,833,784.28 and $55,013.53. On September 18, having received a payoff of its loan from Rainey, the Bank voluntarily dismissed its action against the car wash with prejudice, and with the agreement of all the parties, including Rainey and McCabe.

Between the closing of the Rainey family loans in September 2013 and early 2015, the Carnett's LLC continued to have financial problems.[2] Although the settlement agreement had barred Rainey from hiring his wife, she was working at the car wash by February 2014 and arranging to have checks issued to her son rather than herself in an effort to prevent the McCabes from learning of her duties. In July 2015, counsel for the Rainey family notified the McCabes that the car wash had defaulted on the new loan and reminded them that under the settlement agreement, Rainey had discretion to sell the company's assets to parties which could include the McCabes themselves.

---

[2] According to Rainey, Patrick McCabe's interference resulted in Cactus's termination of their agreement to manage the car wash, and McCabe also refused Rainey's requests for help in paying the company's bills.

On November 25, 2015, the McCabes sued Rainey for breach of the settlement agreement; for breach of fiduciary duty (derivatively, on behalf of the Carnett's and Car Wash Partners LLCs); for an injunction to prevent "an entity controlled by" Rainey from proceeding with a foreclosure sale of the property, allegedly scheduled for December 1, 2015; and for declaratory relief.[3] On the day this complaint was filed, the trial court granted a temporary restraining order to prevent the foreclosure sale.

On January 5, 2016, after filing an answer and counterclaims to the McCabes' complaint, Rainey's counsel notified the McCabes that he had found a buyer for the car wash, that he expected the McCabes' cooperation in concluding the sale, and that their failure to cooperate would be a breach of the settlement agreement that could result in the closing of the business and "a significant counterclaim against the McCabes."

In fact, the Carnett's LLC had entered into a written agreement on October 14, 2015 to sell the car wash's land, fixtures, and equipment to J. Ralph McClelland, IV for $1.9 million. On February 19, 2016, Rainey and McClelland executed

---

[3] According to the McCabes' amended complaint, filed in July 2016, Rainey "caused Car Wash Partners to cease paying on the terms of" the Rainey family loans in the fall of 2015, "caused [his LLLP] to instigate foreclosure proceedings on the real estate owned by" Car Wash Partners LLC, and "caused [the] Rainey family to attempt a second foreclosure in November 2015."

7

amendments to this purchase-and-sale agreement.[4] In those amendments and an accompanying affidavit of title, Rainey represented that he was the "owner" and the "sole Member" of the Carnett's LLC and that there were no suits pending against it. In an agreement signed only by Rainey on behalf of the company, the assets of the Carnett's LLC were sold to IV Properties a few days later for $1.9 million. Soon after, the company paid off $1.87 million of the $1.943 million owed under the Rainey family notes. The proceeds from the sale were less than the amount owed on the first note, however, such that no sum was left over to satisfy the second note or to distribute to the McCabes or Rainey.

On May 24, 2016, and after the case had been transferred to the judge who had heard the case brought by the Bank, Rainey moved for summary judgment. On June 15, Rainey moved to compel responses to his interrogatories and requests for production of documents and for attorney fees. On June 16, the McCabes moved to add IV Properties as a defendant and the Carnett's LLC as a plaintiff. A hearing on these motions was set for July 18.

---

[4] The amendments noted that McClelland had transferred all his rights in the car wash real estate to IV Land & Properties, LLC.

On July 12, 2016,[5] Rainey filed a supplemental brief in which he noted the overlap between the claims in the original and amended complaints and asserted that the legal arguments in his motion for summary judgment "apply equally to the claims asserted in [the McCabes'] Amended Complaint." Three days later, on July 15, the McCabes noticed the deposition of Rainey and his entities and moved for a continuance of the hearing on the parties' motions for "at least 15 days" to permit them "to obtain affidavits and take depositions essential" to opposing Rainey's motion for summary judgment. On July 18, the McCabes filed their amended complaint, which included allegations of improprieties concerning the sale of the car wash to IV Properties. The amended complaint retained claims for breach of the settlement agreement, breach of fiduciary duty (on behalf of the Carnett's LLC), and declaratory and injunctive relief, but added direct claims for breach of fiduciary duty and fraud, and also sought punitive damages, judicial dissolution of the LLCs, a setting aside of the sale to IV Properties, and attorney fees. On July 20, the trial court granted the McCabes' motion for a continuance and set a hearing on all pending

___

[5] Rainey apparently saw a copy of the amended complaint before it was filed and served on him a few days later.

9

motions, including summary judgment, for August 4. The parties also agreed to extend discovery until October 20.

On August 3 and 4, 2016, the McCabes filed an affidavit from Patrick McCabe and the certified deposition transcripts of both Rainey and his LLLP. At the hearing on August 4, the McCabes objected to the trial court's consideration of summary judgment as to the amended complaint. After hearing argument on the merits of the motion, the trial court asked the parties to submit draft orders as to summary judgment, but reserved ruling on the parties' remaining motions. On November 18, 2016, the trial court signed and filed Rainey's order granting the motion for summary judgment "in its entirety," but reserving the McCabes' claim for judicial dissolution. This appeal followed.

1. The McCabes first argue that the trial court erred in proceeding with Rainey's summary judgment motion because Rainey never moved for judgment on the amended complaint and because the hearing on the motion was held less than 30 days after the filing of the amended complaint. We disagree.

OCGA § 9-11-56 (c) provides that a motion for summary judgment "shall be served at least 30 days before the time fixed for the hearing." Here, the motion for summary judgment was served on May 24, 2016, more than 30 days before the

10

original hearing date of July 18, and Rainey's supplemental brief of July 12 notified the McCabes that the same grounds urged in the original motion for summary judgment also applied to the amended complaint. Having received Rainey's supplemental brief, the McCabes also asked for and obtained a continuance of 15 days (from July 18 to August 4, 2016) for purposes of obtaining additional discovery in the case. Thus we cannot say that the trial court erred when it considered Rainey's motion for summary judgment as to the amended complaint. See *Southern Trust Ins. Co. v. Ga. Farm Bureau Mut. Ins. Co.*, 194 Ga. App. 751, 753 (1) (391 SE2d 793) (1990) (even if time for a response to a motion for summary judgment was "more appropriately computed from the time the motion was 'perfected,' appellants waived expansion of the time and resetting of [a] trial" when they rejected a court's offer of a continuance and sought a decision on summary judgment before trial); *Rushing v. Ellis*, 124 Ga. App. 621, 623 (1) (184 SE2d 667) (1971) (a trial court did not err in considering a summary judgment motion as to an amended complaint filed after the hearing on the motion but before the rendition of the judge's order).

2. In two enumerations of error, the McCabes argue that the trial court erred when it granted summary judgment on all of their claims except for judicial

11

dissolution because questions of fact are raised by the entirety of the evidence.[6]

Without distinguishing between the multiple causes of action asserted in their amended complaint, the McCabes argue that Rainey committed fraud, violated the settlement agreement and/or breached his fiduciary duties when he (a) hired his wife to work at the car wash, (b) falsely identified himself in the sale to IV Properties as the "owner" and "sole member" of the Carnett's LLC and failed to obtain the McCabes' signatures on the sale documents, and (c) mismanaged the car wash and obtained financing from his family. We agree that questions of fact remain on these issues.

The interplay between the fiduciary duties of a manager of a limited liability company and written agreements as to those duties is described in the relevant provisions of the Georgia Limited Liability Company Act, OCGA § 14-11-100 et seq.,[7] and specifically in OCGA § 14-11-305, as follows:

_____

[6] Although the McCabes argue that the trial court erred in failing to consider the deposition transcripts and Patrick McCabe's affidavit by Patrick McCabe filed on or just before the hearing, the trial court's order noted that had "reviewed the filings in this case following" the grant of the continuance and that the McCabe affidavit "does not contradict" Rainey's own affidavit.

[7] The Act was enacted in 1993 and became effective in 1994. See Ga. L. 1993, p. 123, § 1 (effective March 1, 1994).

(1) *A member or manager shall act in a manner he or she believes in good faith to be in the best interests of the limited liability company and with the care an ordinarily prudent person in a like position would exercise under similar circumstances.* A member or manager is not liable to the limited liability company, its members, or its managers for any action taken in managing the business or affairs of the limited liability company if he or she performs the duties of his or her office in compliance with this Code section.

. . .

(4) *To the extent that*, pursuant to paragraph (1) of this Code section or otherwise at law or in equity, *a member or manager has duties (including fiduciary duties) and liabilities relating thereto to a limited liability company or to another member or manager*:

(A) The member's or manager's *duties and liabilities may be expanded, restricted, or eliminated by provisions in the articles of organization or a written operating agreement*; provided, however, that *no such provision shall eliminate or limit the liability of a member or manager:*
(i) *For intentional misconduct or a knowing violation of law*; *or*
(ii) For any transaction for which the person *received a personal benefit in violation or breach of any provision of a written operating agreement*; *and*

(B) The member or manager *shall have no liability to the limited liability company or to any other member or manager for his or her good faith reliance on the provisions of a written operating agreement, including, without limitation, provisions thereof that relate to the scope of duties (including fiduciary duties) of members and managers.*

(Emphasis supplied.)

13

As this Court has held, OCGA § 14-11-305 provides that "any fiduciary duties that a member of an LLC has may be modified or eliminated (with a few exceptions) by the operating agreement." *Ledford v. Smith*, 274 Ga. App. 714, 724 (2) (a) (618 SE2d 627) (2005) (citation omitted).

> [T]he contractual flexibility provided in OCGA § 14-11-305 is consistent with OCGA § 14-11-1107 (b) of the LLC Act[,] which provides that "[i]t is the policy of this state with respect to limited liability companies to give maximum effect to the principle of freedom of contract and to the enforceability of operating agreements."

Id. (citation and some punctuation omitted).

Here, both parties clearly envisioned the settlement agreement as a supplement to the operating agreements, noting that "to the extent there is a conflict between the terms of this Agreement . . . and the original operating agreements," the terms of the settlement agreement "shall control." See OCGA § 14-11-101 (18) (defining an "operating agreement" as "any agreement, written or oral, . . . as to the conduct of the business and affairs of a limited liability company" that is binding on all the members). Under the settlement agreement, moreover, and although Rainey was empowered to obtain "any new financing he deems appropriate on terms acceptable to him as Manager," he was not permitted to "charge the company higher than market

14

rate." Further, the McCabes's September 2013 authorization provided not only that Rainey could borrow from his family on terms he deemed appropriate "in his sole discretion," but also "in accordance with his fiduciary duties to the [Carnett's LLC]." Thus, although Rainey could not be liable for any "good faith reliance on [the settlement agreement's] provisions," OCGA § 14-11-305 (4) (B), Rainey remained liable for any breach of the settlement agreement or his continuing fiduciary duty to the LLCs, including but not limited to "intentional misconduct," "a knowing violation of law," or receiving "a personal benefit in violation or breach of a written operating agreement." OCGA § 14-11-305 (4) (A) (i), (ii).

(a) The settlement agreement provided that Rainey was not authorized to hire his wife to work at the car wash, and there was evidence showing that the couple diverted company income to their son in an effort to hide this breach of the settlement agreement from the McCabes. At the least, questions of fact therefore remain as to whether Rainey breached the settlement agreement or his fiduciary duty and whether he received any benefit in violation of the settlement agreement when he committed these acts. OCGA § 14-11-305 (4) (A) (i), (ii); *Internal Med. Alliance v. Budell*, 290 Ga. App. 231, 237-238 (4) (659 SE2d 668) (2008) (given the "high level of hostility and the bad blood between the parties," a trial court was authorized to conclude that

15

the manager's decision not to take any steps to have the passive member's bills collected "was made in bad faith in in effort to negatively impact [the passive member's] interest" in a medical LLC).

(b) As to the McCabes' claims that Rainey misrepresented himself as the "sole owner" of the Carnett's LLC, the record shows that at all relevant times, including at the execution of the settlement agreement, Rainey was not the sole owner; rather, Car Wash Partners, which the McCabes and Rainey co-owned, was the "sole member" of the Carnett's LLC. Further, although Rainey was authorized to sell the car wash at his discretion, and although the settlement agreement released Rainey from obtaining the McCabes' signatures as to the franchising arrangement with Cactus, it did not so release him as to documents accomplishing the sale of the company. For example, the agreement required the McCabes to "cooperate . . . in executing loan documents, releases and dismissals . . . in a timely matter in order to obtain appropriate financing" — clearly indicating that as co-owners, the McCabes' signatures were required on such documents, for purposes which may well have included notice of events relevant

16

to their interests.[8] Construed in favor of the McCabes, a question of fact thus remains as to whether Rainey breached the settlement agreement or his fiduciary duty when he misrepresented himself as the "sole member" of the Carnett's LLC and when he failed to obtain signatures from the McCabes before selling that LLC. The trial court erred when it granted summary judgment to Rainey on these issues.

(c) The McCabes also assert that Rainey "caused" the acceleration in the car wash's losses in the wake of the settlement agreement and that Rainey obtained the loans from his family "to enrich himself and his family" when better terms were available elsewhere.

The portions of the record cited by the McCabes on appeal show that expenses (including wages, interest, and water) rose while revenues declined, which raises a genuine question of material fact as to whether Rainey intentionally mismanaged the business. As to the Rainey family loans, the McCabes' September 2013 authorization

---

[8] The operating agreement provided, for example, that each member of the Carnett's LLC "would be irreparably damaged if any of the provisions of [the] [a]greement [is] not performed in accordance with their specific terms" and that "monetary damages would not provide an adequate remedy in such event." See, e.g., *King v. Brock*, 282 Ga. 56, 57 (646 SE2d 206) (2007) (a party proving another's breach of contract is entitled to nominal damages "(1) where no actual damage flows from the injury; or (2) where the violation of a right is shown, substantial damages claimed, and some actual loss proved, and yet the damages are not susceptible of reasonable certainty of proof as to their extent").

17

for Rainey to proceed with borrowing from his family noted that Rainey's discretion would have to be exercised "in accordance with his fiduciary duties" to the Carnett's LLC. The settlement agreement specified, moreover, that if Rainey self-financed a new loan, he "shall not charge the [Carnett's LLC] higher than market rate." Construed in favor of the McCabes, this evidence also raises a genuine question whether Rainey breached the settlement agreement or his fiduciary duty when he obtained his family's loans to the Carnett's LLC at an above-market rate, giving his family, which was not a party to the settlement or operating agreements, the power to foreclose on the real estate owned by the Carnett's LLC, which the family attempted to do twice in late 2015. The trial court thus erred when it granted summary judgment to Rainey on these issues. See *Budell*, 290 Ga. App. at 237-238 (4) (trial court was authorized to conclude that a manager's decision not to have the passive member's bills collected "was made in bad faith in order to negatively impact" the passive member's interest in an LLC).

3. The McCabes also argue that the trial court erred when it held that the dismissals of their cross-claims in the Nicolet action barred their claims against Rainey and his entities as res judicata. We agree.

18

OCGA § 9-12-40 provides that "[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies *as to all matters put in issue or which under the rules of law might have been put in issue* in the cause wherein the judgment was rendered until the judgment is reversed or set aside." (Emphasis supplied.)

> For one action to act as a bar to a subsequent action, the two actions must share certain characteristics. First, the parties to the two actions must be identical and, second, *the subject matter of the actions must also be identical*. Additionally, the party against whom the doctrine of res judicata is raised must have had a full and fair opportunity to litigate the issues in the first action.

*Baxter v. Fairfield Fin. Svcs*., 307 Ga. App. 286, 289 (1) (704 SE2d 423) (2010) (punctuation and footnotes omitted; emphasis supplied).

Although the McCabes have not provided us with a citation to their cross-claims in the Nicolet action, it appears that the portion of their claims as to which we have reversed the grant of summary judgment in the instant action — that is, the hiring of Rainey's wife, his misrepresentation of himself as "sole owner" of the Carnett's LLC, his failure to obtain the McCabes's signatures at the closing of the Rainey family loan, and his mismanagement of the LLC, including the Rainey family

19

loans — are arguable breaches of Rainey's managerial duties as established in the settlement agreement, which postdates the dismissal of the McCabes' cross-claims in the Nicolet action by four months. Because the McCabes could not have put these matters at issue in their cross-claims, they are not barred from raising the matters in this action, and the trial court erred when it concluded otherwise. *Baxter*, 307 Ga. App. at 290-291 (1) (even where two actions were factually linked, they were not "identical" for purposes of res judicata when they concerned breaches of different documents and thus different contractual obligations).

4. Citing *Benedek v. Bd. of Regents*, 332 Ga. App. 573 (774 SE2d 150) (2015), the McCabes also argue that the trial court should have considered its motion to add IV Properties as a defendant and the real estate LLC as a plaintiff by considering whether these new parties would be "prejudiced" by their addition to the case and "whether [the McCabes have] some excuse or justification for having failed to name and serve [them] previously." See id. at 575 (1) (b) (citation and punctuation omitted). As the McCabes note, however, we reversed the trial court in *Benedek* for considering "the merits of the claim against the[ ] parties" as part of its analysis of the motion to add parties. Id. Here, by contrast, the trial court simply reserved the motion to add parties until after its ruling on Rainey's summary judgment motion without

20

considering the merits of either the motion to add parties or the claims against the new parties themselves. There was no error.

In sum, we affirm the trial court's taking up of Rainey's motion for summary judgment, but we reverse the grant of summary judgment as to Rainey's arguably intentional misconduct in violation of the parties' agreements in hiring his wife at the car wash, misrepresenting his status as sole owner of the Carnett's LLC, failing to obtain the McCabes' signatures on the closing documents of the Rainey family loans, and mismanaging the car wash, including granting his family authority to foreclose on the property. We therefore remand the case for further proceedings consistent with this opinion, including consideration of the McCabes' cross-claims and the damages, if any, suffered by the McCabes as a result of Rainey's acts or omissions. The McCabes' motion to add IV Properties as a party remains pending before the trial court.

*Judgment affirmed in part and reversed in part, and case remanded with direction. McFadden, P. J., and Bethel, J., concur*.