**FOURTH DIVISION**
**DOYLE, P. J.,**
**McFADDEN, P.J. and COOMER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 28, 2019**

# In the Court of Appeals of Georgia

A19A0466. COLQUITT v. BUCKHEAD SURGICAL ASSOCIATES, LLC et al.

MCFADDEN, Presiding Judge.

This case arises out of the termination of a member of a medical practice. That former member, the plaintiff below, challenges the grant of summary judgment to two of the remaining members, defendants below, on his breach of fiduciary duty claims. Because there are no genuine issues of material fact, we affirm. Also before us are challenges to the dismissal of breach of fiduciary duty claims as to two other members. But because the complaint failed to state a claim upon which relief could be granted as to those defendants, we also affirm those dismissals.

1. *Facts and procedural posture.*

In January 2013, doctors J. Dewayne Colquitt and Kevin McGill founded Buckhead Surgical Associates, LLC ("BSA"), a medical practice, and Buckhead Surgery Center, LLC ("BSC"), the practice's surgery center. Three other doctors, Lee Skandalakis, Charles Procter, and C. Daniel Smith, subsequently joined the practice as members of BSA and BSC. Colquitt was the first managing member of the practice.

In April 2015, Colquitt was removed by the other members as managing member, and Skandalakis and Smith were appointed as co-managing members. On May 18, 2015, in a letter sent by his attorney, Colquitt notified the other members that he wanted to leave the practice and proposed buyout terms. On May 22, 2015, the other members voted to terminate Colquitt's employment both for cause, finding 17 grounds for termination, and alternatively, without cause. That same day, the members notified Colquitt by letter that he was immediately terminated for cause, that he was no longer permitted access to the practice's premises or computer system, and that the practice would provide medical care to patients previously treated by him if they did not request that their care be transferred to Colquitt.

In April 2016, Colquitt filed a complaint against BSA, BSC, Smith, Skandalakis, McGill, and Procter, which he amended three months later in July 2016.

2

In the complaint and amended complaint, Colquitt asserted claims for breach of fiduciary duty, breach of contract, punitive damages, and attorney fees. In August 2016, the trial court entered an order that, among other things, dismissed all claims against McGill. In January 2017, the trial court entered an order that dismissed all claims against Procter. In September 2017, Colquitt filed a second amended complaint, naming only BSA, BSC, Smith, and Skandalakis as defendants. In December 2017, the trial court entered an order granting summary judgment to Smith and Skandalakis as to the breach of fiduciary duty claims. Colquitt appeals.

2. *Summary judgment in favor of Smith and Skandalakis.*

Colquitt challenges the trial court's grant of summary judgment to Smith and Skandalakis on the breach of fiduciary duty claims. The challenges are without merit.

> To prevail on a motion for summary judgment, the moving party must show that there is no genuine dispute as to a specific material fact and that this specific fact is enough, regardless of any other facts in the case, to entitle the moving party to judgment as a matter of law. When a defendant moves for summary judgment as to an element of the case for which the plaintiff, and not the defendant, will bear the burden of proof at trial the defendant may show that he is entitled to summary judgment either by affirmatively disproving that element of the case or by pointing to an absence of evidence in the record by which the plaintiff might carry the burden to prove that element. And if the defendant does so, the plaintiff cannot rest on his pleadings, but rather must point to specific evidence giving rise to a triable issue. We review a summary judgment ruling de novo, viewing the evidence in the record,

3

as well as any inferences that might reasonably be drawn from that evidence, in the light most favorable to the nonmoving party.

*Miller v. FiberLight, LLC*, 343 Ga. App. 593, 593-594 (1) (808 SE2d 75) (2017) (citations and punctuation omitted).

In this case, Smith and Skandalakis have shown that there is an absence of evidence as to the breach element of Colquitt's claims for breach of fiduciary duties. See *Sewell v. Cancel*, 331 Ga. App. 687, 689 (2) (771 SE2d 388) (2015) ("A claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach.") (citation and punctuation omitted).

(a) *Termination.*

Colquitt claims that Smith and Skandalakis, as managing members, breached their fiduciary duties to him when they terminated his employment for cause. "Under OCGA § 14-11-305 (1), the managing members of a limited liability company owe fiduciary duties to the company and its member investors." *Practice Benefits v. Entera Holdings*, 340 Ga. App. 378, 380 (2) (797 SE2d 250) (2017). However,

> [p]ursuant to this [c]ode section, any fiduciary duties that a member of an LLC has may be modified or eliminated (with a few exceptions) by the operating agreement. As we [have] explained, the contractual flexibility provided in OCGA § 14-11-305 is consistent with OCGA §

4

14-11-1107 (b) of the LLC Act which provides that: It is the policy of this state with respect to limited liability companies to give maximum effect to the principle of freedom of contract and to the enforceability of operating agreements.

*Ledford v. Smith*, 274 Ga. App. 714, 724 (2) (a) (618 SE2d 627) (2005) (citations and punctuation omitted).

Here, the operating agreements of BSA and BSC limited the liability of a managing member for breach of fiduciary duties to "acts or omissions *in the management of the Company* only in the case of gross negligence, willful misconduct or breach of this Agreement by such Managing Partner; but a Managing Partner shall not be liable to the Company or any other Partners for any other acts or omissions."[1] (Emphasis supplied.) So under the plain terms of the operating agreements, Colquitt's breach of fiduciary duty claims based on his termination must show that Smith and Skandalakis were acting in the management of the company and that such acts of management amounted to gross negligence, willful misconduct, or breach of the operating agreement. But Colquitt cannot make these showings.

---

[1] We note that although there was no partnership, the operating agreements of the limited liability companies referred to the LLC members as "partners" and the managing members as "managing partners."

5

The very premise of his claim, that Smith and Skandalakis terminated him, misconstrues the acts of Smith and Skandalakis. They did not unilaterally terminate Colquitt's employment. Rather, they simply participated in a vote — along with other members — to terminate Colquitt's employment. The act of voting was not an act in the management of the company. Management acts, as set forth in the operating agreements, included acts such as expending the income of the company, purchasing insurance for the company, paying taxes, and applying for permits and licenses. But, under the terms of the operating agreement, participation in a member vote to terminate another member is not deemed a managerial act or otherwise limited to the managing members; it was instead an act that any member of the company was authorized to take. The BSA operating agreement provides:

> The Practice may terminate the Employment Agreement of a Partner (the "Terminated Partner") (1) for "Cause" (as defined in the Terminated Partner's Employment Agreement) only upon the affirmative vote of a Supermajority Interest of the Partners, or ([2]) without "Cause" only upon the affirmative vote of at least seventy five percent (75%) of the Units held by Partners at the time of the vote. The Terminated Partner shall not be allowed to vote and shall not be counted as a Partner for the purposes of such votes.

6

Under that provision, Smith and Skandalakis, along with the members other than Colquitt, voted to terminate Colquitt for cause and, alternatively, without cause. And as the trial court found, "there is no genuine issue of material fact surrounding the question of whether there was cause to terminate: there was." So contrary to Colquitt's claim, Smith and Skandalakis did not breach any managerial fiduciary duty by merely taking action expressly authorized by the operating agreement. See *Ledford*, supra at 725 (2) (a) (no breach of fiduciary duty where terms of the limited liability company's operating agreement allowed the activity which occurred); *Stoker v. Bellemeade*, 272 Ga. App. 817, 824-826 (3) (615 SE2d 1) (2005) (members did not breach fiduciary duties by participating in acts that the operating agreement allowed them to do). See also *Miller*, supra at 604 (2) (d) (noting that under applicable Delaware law, a party taking action specifically authorized under a limited liability company agreement does not breach a default fiduciary duty); *Ameris Bank v. Alliance Inv. & Mgmt. Co.*, 321 Ga. App. 228, 233-234 (3) (a) (739 SE2d 481) (2013) (in breach of implied covenant of good faith case, holding that there can be no breach where a party has done what the provisions of the contract expressly give him the right to do).

(b) *Setting up practices in BSA space.*

Colquitt enumerates that the trial court erred in granting summary judgment on his claim that Smith and Skandalakis breached their fiduciary duties to him by setting up their own practices in BSA's office space in violation of the operating agreement. But this was not one of the breach of fiduciary duty claims set forth in his complaint, amended complaint, or second amended complaint. Rather, in those complaints he claimed that Smith and Skandalakis, as managing members of BSA and BSC, breached their fiduciary duties by terminating him, locking him out of the practice's property, preventing him from accessing the practice's computer system, operating on his patients, exposing him to liability under his personal guarantees, and failing to buy him out. So this enumeration of error "furnish[es] nothing for us to review." *Georgia High Sch. Ass'n v. Charlton Cty. Sch. Dist.*, __ Ga. App. __, (826 S.E.2d 172) (2019).

(c) *Buyout.*

Colquitt contends that he is entitled to a buyout under the terms of the operating agreements, when read in conjunction with his employment contract, and thus the trial court erred in granting summary judgment on his claim that Smith and Skandalakis breached their fiduciary duties by failing to pay the mandated buyout. We disagree.

As an initial matter, there is no mandatory buyout provision in either the BSA or BSC operating agreements, and certainly no provision requiring Smith and Skandalakis, as managing partners, to buy out Colquitt. The operating agreements contain an optional offer-to-purchase provision, stating that under certain circumstances a member "may . . . offer to purchase" another member's units in the practice. But as the trial court correctly found, the operating agreements do not require a buyout by Smith and Skandalakis. See *Tackett v. Ga. Dept. of Corrections*, 304 Ga. App. 310, 312-313 (1) (696 SE2d 359) (2010) (finding contract language using the word "may" to be permissive, not mandatory); *Johnson v. Fulton County*, 235 Ga. App. 277, 279 (1) (a) (509 SE2d 355) (1998) (same).

Moreover, Colquitt's argument that the operating agreements must be read in conjunction with his separate employment contract to create a mandatory buyout provision in the operating agreements is without merit. He cites language in his employment contract with BSA providing that upon termination of his employment, "the Practice [BSA] shall pay to [Colquitt] as compensation, unless otherwise mutually agreed to, a Buy-Out Amount, as defined in the Practice's Operating Agreement." There is, however, no buyout amount defined in the BSA operating agreement. So while the language in the employment contract may obligate BSA to

9

pay a buyout where one is agreed to, the employment contract does not mandate such an agreement. Nor does it require Smith and Skandalakis, as part of their fiduciary duties, to buy out Colquitt.

Colquitt cites *McCabe v. Rainey*, 343 Ga. App. 480 (806 SE2d 867) (2017), in support of his claim that the operating agreement and the employment agreement must be construed together. In that case, the parties executed amendments to the operating agreement which expressly incorporated the terms of a binding settlement agreement, so the court construed the agreements together. Id. at 482. But in this case, there were no amendments to the operating agreement and no mention in the operating agreement of incorporating any other contracts. Indeed, the BSA operating agreement contains a clause providing that "[t]his agreement constitutes the entire agreement of the [members] relating to the Practice[.]" So Colquitt has failed to show that the trial court erred in granting summary judgment on this claim.

3. *Dismissal of claims against McGill and Procter.*

Colquitt argues that the trial court erred in granting the motions to dismiss the breach of fiduciary duty claims against McGill and Procter. We disagree.

"[A] motion to dismiss should not be granted unless the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief

10

under any state of provable facts asserted in support thereof." *Stafford v. Gareleck*, 330 Ga. App. 757, 758 (769 SE2d 169) (2015) (citation and punctuation omitted). "[I]n reviewing the grant of a motion to dismiss, an appellate court must construe the pleadings in the light most favorable to the appellant with all doubts resolved in the appellant's favor." Id. (citation and punctuation omitted). Here, the allegations of the complaint, construed in the light most favorable to Colquitt, disclose with certainty that he would not be entitled to relief on his breach of fiduciary duty claims against McGill and Procter.

As noted above, the first element that must be proved to support a claim for breach of fiduciary duty is the existence of a fiduciary duty. *Sewell*, supra. In his amended complaint, Colquitt alleged that McGill and Procter owed him a fiduciary duty as members of the limited liability companies, BSA and BSC. However, OCGA § 14-11-305 (1) provides:

> Except as otherwise provided in the articles of organization or a written operating agreement, a person who is a member of a limited liability company in which management is vested in one or more managers, and who is not a manager, shall have no duties to the limited liability company or to the other members solely by reason of acting in his or her capacity as a member[.]

11

"Because the plain language of OCGA § 14-11-305 provides that non-managing members in manager-managed LLCs owe no duties to the LLC or other members, we hold that non-managing members owe no fiduciary duties to the LLC or the other members." *ULQ, LLC v. Meder*, 293 Ga. App. 176, 185 (7) (666 SE2d 713) (2008). Since the allegations of the complaint show with certainty that McGill and Procter did not owe Colquitt a fiduciary duty as non-managing members of BSA and BSC, the trial court properly dismissed the breach of fiduciary duty claims brought against them.

*Judgment affirmed. Doyle, P.J. and Coomer, J., concur.*